Gidel **MENDEZ–MARTINEZ**
et. al., Plaintiffs,

v.

**CARIBBEAN ALLIANCE INSUR-
ANCE COMPANY (CAICO),**
et al., Defendants.

**Civil No. 10–1474 (DRD).**

United States District Court,
D. Puerto Rico.

Feb. 10, 2012.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiffs.

Israel Fernandez–Rodriguez, Juan J. Casillas–Ayala, Casillas, Santiago & Torres, LLC, San Juan, PR, for Defendants.

**OPINION AND ORDER**

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment and the Statement of Uncontested Material Facts in Support of Motion for Summary Judgment (Docket No. 40), which was referred to Magistrate Judge Camille Vélez Rivé for a report and recommendation (Docket Nos. 72 and 73).

Upon review of Magistrate Judge's Report and Recommendation (Docket No. 78), the Court hereby ADOPTS the same as outlined below and **GRANTS** Universal's motion for summary judgment

(Docket No. 40), **DISMISSING WITH PREJUDICE** Plaintiff's federal claims and **DISMISSING WITHOUT PREJUDICE** the state law claims.

## I. PROCEDURAL HISTORY

On June 1, 2010, Mr. Gidel Méndez–Martínez, his wife Diana Collazo–Santiago and their conjugal partnership (collectively, "Plaintiff") filed a complaint against his former employer under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621 et seq. ("ADEA"), Act No. 100 of June 30, 1959, Act No. 80 of May 30, 1976 and Article 1802 of the Puerto Rico Civil Code, based on alleged discrimination, harassment and retaliatory activities during his employment on the basis of age. (Docket No. 1).

On July 7, 2011, defendants CAICO Insurance Company ("CAICO"), Universal/CAICO, Universal Insurance Company and Universal Group (collectively, "Universal") filed a motion for summary judgment with the corresponding statement of uncontested facts and exhibits in support thereof. Universal's request for summary judgment rests on the grounds that: (1) Plaintiff's claims regarding age discrimination prior to November 3, 2009 are time-barred for failure to timely file the required administrative charge with the Equal Employment Opportunity Commission ("EEOC"); (2) Plaintiff lacks evidence to establish a prima facie case of age discrimination under ADEA; (3) Plaintiff did not suffer and adverse employment action and was not replaced in his former position; (4) Plaintiff resigned voluntarily from his employment with Universal; (5) there was no constructive discharge; and (6) the supplemental state claims lack merit. (Docket Nos. 40, 43, 48 and 49).

On September 9, 2011, Plaintiff opposed Universal's request for summary judgment and statement of uncontested facts.

(Docket No. 53). Thereafter, Universal filed, with leave of the Court, a response in opposition to Plaintiff's filing. (Docket No. 59).

On October 26, 2011, the pending motion for summary judgment and other non-dispositive motions were referred to Magistrate Judge Vélez (Docket Nos. 72 and 73). On December 13, 2011 Magistrate Judge Vélez entered her Report and Recommendation recommending that the Court grant Universal's motion for summary judgment. (Docket No. 78).

In her Report and Recommendation, Magistrate Judge Vélez sets forth the uncontested facts in the instant case and concluded that Plaintiff did not establish a prima facie case for age discrimination under ADEA nor under local law because there was no adverse employment action and because he did not prove that someone younger was favored against him; that there was no constructive discharge because Plaintiff resigned voluntarily; that there was no hostile work environment to support a claim for harassment; and that the claim for retaliatory activities is also unsupported in lack of an adverse employment action.

On December 27, 2011, Plaintiff filed his objections to the Report and Recommendation (Docket No. 79). Therein, Plaintiff mainly rehashes the allegations previously averred in his opposition to Universal's motion for summary judgment, which he claims were not properly addressed or considered by Magistrate Judge Vélez. Thus, Plaintiff asserts that the Magistrate Judge erred in her recommendations and that this Court should not adopt them.

On January 10, 2012, Universal filed an opposition to Plaintiff's objections (Docket No. 81). Universal notes that Magistrate Judge Vélez properly addressed, considered and rejected (when appropriate) all of Plaintiff's arguments and the evidence in-

cluded in the record, and that Plaintiff has failed to establish that the conclusions and recommendations in the Report and Recommendation of Magistrate Judge Vélez are unsupported, or that her application of the laws to the facts of the instant case are legally unsound. Thus, Universal requests that this Court approve and adopt the Report and Recommendation and dismiss Plaintiff's opposition.

## II. MAGISTRATE'S REPORT AND RECOMMENDATION

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* Fed. R.Civ.P. 72(b); D.P.R. Civ. R. 72(a); and *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Nonetheless, an adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections to the recommendations made. Fed.R.Civ.P. 72(b). In such respect, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

■ "Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that

party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto., Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc*) (extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982) (*en banc*) (appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding FED. R.CIV. P. 72(b)); *Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

■ An adversely affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten[1] days of being served' with a copy of the order." *United States v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendation to which an objection is made. *See Bonefont–Igaravidez v. International Shipping Corp.*, 659 F.3d 120 (1st Cir.2011); and *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006).

In the instant case, Plaintiff objects all of the conclusions reached by the Magistrate Judge and contends that the Magistrate Judge failed to consider Plaintiff's allegations that would establish a prima facie case of age discrimination and the claims for hostile work environment, harassment and retaliation. Consequently, the Court reviews *de novo* for plain error both the uncontested facts and the legal analysis of Plaintiff's claims of age discrimination, harassment, and retaliation.

### III. SUMMARY JUDGMENT

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a)*. "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *See Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir.2008) (citing *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir.2008)); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004) (stating that an issue is genuine if it can be resolved in favor of either party). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–661 (1st Cir.2000) (citing *Liberty Lobby, Inc.*, 477 U.S. at 247–248, 106 S.Ct. 2505); *Prescott*, 538 F.3d at 40 (citing *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir.2008)).

■ The principle of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing Fed.R.Civ.P. 56(e) advisory committee note to the 1963 Amendment). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. *Shalala*, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. *Maldonado–Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990); *see also Suarez v. Pueblo*

---

1. Per Local Rule 72(d), parties may object a magistrate judge's report and recommendation within fourteen (14) days after being served with the order.

*Int'l.*, 229 F.3d 49, 53 (1st Cir.2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247–248, 106 S.Ct. 2505. Similarly, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

When considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor in order to conclude whether or not there is sufficient evidence in favor of the non-movant for a jury to return a verdict in its favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record as a whole and refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The burden placed upon the non-movant is one of production rather than persuasion. In other words, in weighing a non-movant's opposition to summary judgment the Court should not engage in jury-like functions related to the determination of credibility.

■ "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000) (finding that "determinations of motive and intent ... are questions better suited for the jury").

■ Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

## IV. ADEA

### A. Elements for a Prima Facie Case

■ ADEA prohibits discrimination in public and private employment against individuals who are at least 40 years of age. 29 U.S.C. §§ 621–634. ADEA violations may be established by proving either disparate treatment or disparate impact. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). Plaintiffs often allege claims under both theories. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93 (2d Cir.2001).

■ Disparate treatment claims under ADEA may be based on direct or circumstantial evidence, as set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a prima facie case of intentional age discrimination may be es-

tablished by demonstrating that: (1) plaintiff is a member of the protected age group (i.e. was at least forty (40) years of age); (2) plaintiff was qualified for the position in question; (3) despite being qualified, plaintiff was adversely affected; and (4) someone younger, with similar or lesser qualifications, was treated more favorably.

The claims of the instant case are consistent with allegations of disparate treatment. Consequently, the Court must determine whether there is direct or circumstantial evidence proving the elements of *McDonnell Douglas* of intentional age discrimination. In this case, there is no doubt that Plaintiff meets the first and the second elements of the prima facie case for age discrimination. In fact, Plaintiff met the first element for this type of action from day one, as he was hired when he was within the ADEA age-protected group. The question remains as to whether Plaintiff meets the last two elements.

In connection with the adverse employment action, the parties have uncontested that Plaintiff prepared a letter of resignation on May 27, 2009 to Universal, wherein he did not make reference to or made any allegation of age discrimination as the basis for his resignation. Plaintiff made an appointment with Mr. Luis Miranda Casañas, Universal's chief executive officer ("CEO"), tendered his resignation and delivered the letter by hand to Universal's CEO. Further, the parties also agree that Plaintiff was asked to reconsider his resignation shortly after its delivery by to Universal's chief legal officer and the CEO's daughter. He did not immediately accept to rescind and determined to ponder the matter. When he eventually notified the CEO on the same date about his change of heart, the CEO would not accept the withdrawal of his resignation.

Plaintiff intends to convince this Court that Universal's refusal to accept Plaintiff's reconsideration of his resignation should be considered an adverse employment against him despite the fact that he voluntarily prepared and tendered his resignation letter after numerous promotions and salary increases, and after two prior unsuccessful attempts to resign (once in 2004 and then in 2006) in order to pursue Plaintiff's interests of opening his own insurance company. Under such chain of events, this Court simply cannot accept Plaintiff's allegation that Universal's acceptance of Plaintiff's resignation, despite having rescinded resignation, constitutes an adverse employment action.

To establish the fourth element of a prima facie case of age discrimination, plaintiffs must prove that the employer must have discriminated against plaintiff in favor of someone younger. In this respect, the First Circuit has previously stated that

> [a] discharged employee 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.' Rather, 'a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.'

*LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 846 (1993) (citations omitted) (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990), cert. denied, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990)). Thus, to reasonably infer that Plaintiff was replaced by a younger employee, this Court would have to conclude that Plaintiff's duties, and no others, were allocated to a younger employee that was hired to perform Plaintiff's duties subsequent to his resignation.

In this respect, Plaintiff averred that Ms. Vale, a significantly younger and

less experienced person than Plaintiff, was appointed as the vice president of a division of CAICO two (2) days before Plaintiff's resignation as CAICO's president. Nonetheless, Plaintiff made no allegation that Ms. Vale, or any other person, was hired or reassigned to replace Plaintiff, or that Universal assigned any or all of Plaintiff's duties or functions to such person. Instead, Plaintiff's contention that Universal discriminated against him in favor of a younger employee is based solely on the fact that Plaintiff had nothing to do with Ms. Vale's appointment as vice president and on the evident age difference between the two. Plaintiff has failed to proffer any evidence suggesting that Universal assigned his job to a younger employee or that his duties were reassigned in whole or in part to a younger employee in his or her favor.

For the reasons set forth above, and after examining the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, this Court finds that Plaintiff has failed to establish a prima facie case as he has not been adversely affected [2] and or replaced by a younger person to perform his duties.

**B. Constructive Discharge**

 When a plaintiff in an employment discrimination case alleges that the adverse employment action which he suffered was an unpleasant working environment that resulted in his discharge, such allegation "presents a special wrinkle that amounts to an additional prima facie element." *Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 612 (1st Cir.2000) (setting for the "wrinkle" in a Title VII context); *see also Torrech–Hernández v. Gen. Elec. Co.*, 519 F.3d 41, 50 (1st Cir.2008) (outlining the additional requirements of an ADEA constructive discharge theory prima facie case). Under the constructive discharge theory, the plaintiff must show that the employer engaged "in a calculated, age-inspired effort to force an employee to quit." *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 117 (1st Cir.2004). However, not all unpleasant conduct is sufficient to show constructive discharge. Rather, a plaintiff must show that "the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." *Velazquez–Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 12 (1st Cir.2007). The First Circuit has further specified that "the question is not whether working conditions ... were difficult or unpleasant, but rather, an employee must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship [and] ... it effectively must be void of choice or free will." *Torrech–Hernández*, 519 F.3d at 50 (internal quotation and citation omitted).

 In support of his allegations, Plaintiff presented evidence showing that: (1) Plaintiff was taken away functions and duties belonging to his role in CAICO, such as the marketing functions,[3] functions of hiring officers at CAICO,[4] and the ad-

---

**2.** *See infra* as to Plaintiff's allegations of constructive discharge.

**3.** Plaintiff admitted in his deposition that around 2005, when he was Executive Vice President of CAICO, the marketing functions were transferred to a customer call center, which was newly created as the result of certain corporate reorganization to consoli-

date certain areas common to various entities that composed the Universal group. *See* Docket No. 40–4, page 35. This Court finds no employer discriminating animus in this allegation.

**4.** Plaintiff specifically mentioned the hiring of the following persons: Mr. José Benítez, hired on as president of a division of CAICO

ministration of the office building;[5] (2) the CEO had made remarks about his intent to build a team of young professionals in preparation for passing Universal's administration onto his daughter; (3) on April of 2009, the CEO increased the number and frequency of visits to CAICO's offices allegedly displaying a "hostile attitude," which consisted of plaintiff's perception that the CEO was not greeting him with a handshake as frequently as before, that the CEO was escorted by a bodyguard, and that the CEO made derogatory comments about CAICO and the employees under Plaintiff's supervision;[6] (4) upon learning of the resignation of two other officers of CAICO earlier that day (Mr. Soto and Mr. Forteza), he felt compelled to resign out of indignation and fear that Plaintiff would also be fired;[7] and (5) when Plaintiff tried to retract his resignation on the same day of its delivery, the CEO refused to accept it. (Docket No. 53 and accompanying documents thereto).

In this respect, Plaintiff attempts to convince this Court that the duties and functions that were allegedly taken away from him were inherent to the positions Plaintiff held at CAICO. Plaintiff admitted that he had no knowledge of the reasons for CAI-

CO's decision, but that they must have been based on a discriminatory animus. *See* Docket Nos. 40 and 53.

■ This Court, does not deem proper to second guess employer decisions taken by the directors and officers of for-profit entities that are generally motivated to improve performance of the results of operations of the entities under their care. In the case of corporate conglomerates composed of multiple controlled entities, directors and officers take many decisions in furtherance of their business objectives without having to consult with every president or vice president of the entities within such conglomerate. Absent any evidence that proves a discriminatory animus in the decision-making process; federal courts may not assess the merits or rationality of nondiscriminatory business decisions. *See Meléndez v. Autogermana, Inc.,* 622 F.3d 46, 53 (1st Cir.2010); *Webber v. Int'l Paper Co.,* 417 F.3d 229, 238 (1st Cir.2005); *Rathbun v. Autozone, Inc.,* 361 F.3d 62, 74 (1st Cir.2004); and *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991) ("Courts may not sit as super personnel departments, assessing the merits—or

---

around May or June of 2006 (obviously not contemporary to his resignation on May of 2009); Mr. Romero, hired as an auditor of CAICO (without any allegation as to his hire date or the contemporaneity with Plaintiff's resignation from CAICO. *See* Docket No. 53 at page 8, 53–1 at pages 3 & 8.); and Ms. Vale, hired as vice president of a division of CAICO on May 25, 2009.

5. Plaintiff admitted that until the year 2005, the building administration duties were the responsibility of CAICO's president, which position was held by Mr. Johnny Benítez at the time. Those duties were finally transferred on or around the year 2007 onto the president of Universal Insurance Company, which position was held by Mr. Pérez and who was sixty (60) years of age at the time. *See* Docket No. 40, ¶¶ 38 & 39.

6. Plaintiff alleged that the CEO referred to CAICO's employees as "a bunch of laid backs," "good for nothing," that CAICO was "a good for nothing company", and "that he (the CEO) was tired of the culture of th[at] little operation." (Docket No. 53–1, ¶ 74). None of these allege employer discriminating animus.

7. Of all of the above comments, only the statement of building "a team of young professionals" initially impresses, but no facts are provided as to the ages of those who were replaced to build such team or whether they replaced employees at Universal or they were hired to fill new positions at Universal. Further, and most critical, Plaintiff at all times was being promoted and receiving substantial increases in salary during his employment at CAICO. *See infra* at pages 347–48.

even the rationality—of employers' nondiscriminatory business decisions.").

Of the aforementioned facts, none rise to the level of constructive discharge. Not one of these facts indicate that Plaintiff's free will was annihilated and that he had no choice other than to resign from his position. Further, the First Circuit has stated that "apprehension of future termination is insufficient to establish constructive discharge—instead an employee is obliged not to assume the worst, and not to jump to conclusions too fast." *Torrech–Hernández*, 519 F.3d at 51–52 (internal quotation omitted). Plaintiff proffers no evidence indicating that he was left without a reasonable option other than to tender his resignation and no indication that the CEO's actions towards him constituted "harassment so severe and oppressive that staying on the job while seeking redress [was] intolerable." *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 118 (1st Cir.2004). Consequently, the Court finds that Plaintiff has failed to meet his burden of establishing a prima facie case of discrimination under *McDonnell Douglas.* The Court hereby GRANTS Universal's motion for summary judgment as to the ADEA discrimination claim based upon a constructive discharge theory.

## C. Harassment and Hostile Work Environment

■ To succeed in a hostile work environment claim under ADEA, a plaintiff must show evidence demonstrating that: (1) he is a member of the class protected by the ADEA; (2) he was subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of the plaintiff's employment and create an abusive work environment; (5) the objectionable behavior was both subjectively and objectively offensive such that a reasonable person would find it hostile or abusive; (6)

that the plaintiff found it hostile or abusive; and (7) some basis for employer liability has been established. *See Gutiérrez–Lines v. Puerto Rico Elec. and Power Authority*, 751 F.Supp.2d 327, 341–342 (D.P.R.2010) (citing *Marquez v. Drugs Unlimited, Inc.*, 2010 WL 1133808 at *8 (D.P.R.2010) and *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir.2001)); *see also Rodriguez–Torres v. Gov't Dev. Bank of Puerto Rico*, 704 F.Supp.2d 81, 100 (D.P.R.2010). The Court typically looks to the totality of the circumstances, analyzing "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" in order to determine whether a hostile work environment exists. *O'Rourke*, 235 F.3d at 728–29 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

■ In support of the harassment and hostile work environment claims, Plaintiff proffered the same evidence discussed above relating to his constructive discharge theory. In addition, Plaintiff alleged that: (1) sometime in April of 2009, the CEO had made derogatory comments about Mr. Soto, an officer of CAICO, when he referred to him in front of Plaintiff as "that fat old man" ("el viejo gordo ese"); (2) also on April of 2009, the CEO had made derogatory comments about Mr. Forteza, another officer of CAICO, when he referred to him in front of Plaintiff as "that young fella" ("el muchachito ese"); and (3), that he felt compelled to resign out of indignation after learning that Mr. Soto and Mr. Forteza resigned from their positions at CAICO because, as Plaintiff alleged, they could no longer cope with the CEO's harassment and the hostile work environment created against them. (Docket No. 40–5, pages 30–31 and Docket

348

No. 53 and accompanying documents thereto).

In addition to examining Plaintiff's allegations, the Court also analyzed the evidence presented by Universal in opposition to Plaintiff's claim of harassment and hostile work environment. The Court examined Plaintiff's history of promotions and salary increases, Universal's attempts to prevent Plaintiff's resignation from CAICO, and the circumstances surrounding his hiring and resignation.

To such extent, the record shows that Plaintiff was hired during November of 1992 to work at CAICO at the age of forty-one (41). On 2002, his salary was $130,200, which was increased to $150,200 on 2003. On 2004, after the CEO convinced Plaintiff not to resign from CAICO, Plaintiff was promoted to Senior Vice President of CAICO, with a corresponding salary increase to $225,000. The next year, during 2005, Plaintiff was promoted again to Executive Vice President of Underwriting of CAICO, and his salary was increased to $261,700 (base salary of $191,700 plus $70,000 in expense reimbursements and other benefits and incentives). On 2006, Plaintiff tried to resign once again to pursue his interests of opening his own insurance company, but the CEO convinced him to remain at CAICO. At that time, he was promoted as President of CAICO. On 2008, Plaintiff received another salary increase to at least $297,740 (base salary of $227,740 plus $70,000 in expense reimbursements and other benefits and incentives). Lastly, on 2009 and merely two weeks before his resignation, Plaintiff's base salary was increased to $239,126 with the same expense reimbursements and retaining other benefits and incentives of the immediate past. Also on 2009, Plaintiff was publicly recognized amongst his peers and employees for the operational results achieved during 2008. (Docket No. 40–1, ¶¶ 9–11, 16–24).

The Court further notes that a few months before Plaintiff resigned, he spoke with the CEO and his daughter about CAICO's future and about his own future in CAICO. Plaintiff specifically asked them whether he would be terminated, to which they responded, as admitted by Plaintiff, "no, you know that we are counting [on] you." (Docket No. 40–1, ¶¶ 69–71). Further, the record shows that Plaintiff admitted that he was hired while he was above the ADEA protected age group, that Plaintiff was promoted various times during his employment at CAICO, that he also received numerous increases in salary and benefits, that the CEO showed genuine interest in retaining Plaintiff in his staff and in convincing Plaintiff not to resign from Universal on two separate occasions (in 2004 and in 2006).

Viewing the record in the light most favorable to Plaintiff and drawing all inferences[8] in his favor, this Court cannot find

---

8. In its analysis of the totality of the circumstances, and despite drawing all inferences in Plaintiff's favor, the Court cannot overlook the "same actor" inference. The First Circuit has implicitly recognized the existence of the "same actor" inference, but it has not weighed in on the issue of the strength of the inference. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 847 (1st Cir.1993); *see also McMillan v. Mass. Soc'y. for Prev. of Cruelty to Animals*, 140 F.3d 288, 303 n. 10 (1st Cir. 1998), cert. denied, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999). There is a strong version of the inference advocated by the Fourth Circuit in which the fact that the hirer and firer is the same actor appears to overwhelm any other inference which may be drawn from other evidence. *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir.1991) ("there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer, and the early resolution of this question need not be derailed by strict fealty to proof schemes."). There is also a weak version that treats the same actor circumstance as a piece of evidence like any other, not entitled to any presumptive value. *See Wexler v. White's Fine Furniture, Inc.*, 317

that Universal's conduct was sufficiently severe or pervasive to merit continuing to trial the claim of hostile work environment.

### D. Retaliatory Acts

In a retaliation claim under ADEA, a plaintiff must show that he engaged in a protected activity under ADEA, that he suffered an adverse employment action as a result of his participation in said activity, and that there is a causal connection between those two elements. *See Hernández–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir. 1998).

In this respect, Plaintiff alleged that he filed a complaint with the state EEOC on the basis of age discrimination approximately five (5) months after he resigned from Universal. Plaintiff further alleges that retaliation occurred when Universal sued him for engaging in insurance-related work activities after his resignation from Universal.

In response to this allegation, Universal contends that Plaintiff was sued for breach of contract. On September of 2004, the parties executed a Retention and Deferred Compensation Agreement which included a non-competition clause whereby Plaintiff consented not to engage in business services or activities similar to those offered by Universal within the territory of Puerto Rico for a term of twelve (12) months after the voluntary or involuntary termination of his employment with Universal. As it turns out, and by Plaintiff's own admission during the deposition taken on April 4, 2011 (Docket No. 40–4, pages 5–11), Plaintiff had been employed at two insurance companies in Puerto Rico within the twelve-month period following his resignation from Universal. Based on those set of facts, the Court finds that Universal's counterclaim for breach of contract is not frivolous and prima facie non-discriminatory as the agreement was signed on 2004, when there was no vestige of any allegation of age discrimination. Further, Plaintiff admits that the fact that motivated the agreement was non-discriminatory as Plaintiff was seriously contemplating establishing his own insurance enterprise, while on the other hand, the CEO wished to retain Plaintiff in CAICO's staff by granting him a $75,000 salary increase and promotion to senior vice president.[9]

While Plaintiff's filing with the EEOC is considered a protected activity, Plaintiff cannot demonstrate that he suffered an adverse employment action or that Universal filed a lawsuit for breach of contract as a result of the EEOC filing. Consequently, Plaintiff's retaliation claim is dismissed.

### V. SUPPLEMENTAL STATE LAW CLAIMS

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's Puerto Rico law claims. "[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" *Figueroa v. Alejan-*

---

F.3d 564, 573–74 (6th Cir.2003); *Haun v. Ideal Indus., Inc.,* 81 F.3d 541, 546 (5th Cir. 1996) ("we decline to establish a rule that no inference of discrimination could arise under such circumstances."); *Waldron v. SL Indus., Inc.,* 56 F.3d 491, 496 n. 6 (3rd Cir.1995). In this case, this Court agrees with the "strong version" to the extent that Plaintiff resigned voluntarily and no presumption of discrimination applies because the same actor that is allegedly discriminating against Plaintiff on the basis of Plaintiff's age was the same person that hired him, repetitively promoted him, granted salary increases and convinced him on two separate times not to quit his job.

9. The agreement also included the terms of certain deferred compensation benefits that Plaintiff had requested to the CEO. *See* Docket No. 40–4, pages 24–33.

*dro,* 597 F.3d 423, 431 n. 10 (1st Cir.2010) (quoting 28 U.S.C. § 1367(c)(3)). *See Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1176 (1st Cir.1995) (finding that dismissal of supplemental state actions without prejudice is appropriate where there is an "unfavorable disposition of a plaintiff's federal claims" before trial). Although "[i]n an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims," the usual case will point toward declining to exercise jurisdiction over the remaining state-law claims when the Court balances the factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity. *Id.* at 1176; *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

## VI. CONCLUSION

For the reasons set forth above, the Court hereby **ADOPTS,** as supplemented herein, the Magistrate Judge's Report and Recommendation (Docket No. 78) and **GRANTS** Universal's motion for summary judgment (Docket No. 40), **DISMISSING WITH PREJUDICE** Plaintiff's claims under ADEA and **DISMISSING WITHOUT PREJUDICE** the state law claims. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

## INTRODUCTION

Plaintiffs Gidel Méndez–Martínez, his wife Diana Collazo–Santiago and their conjugal partnership (hereafter "plaintiff Méndez–Martínez") filed a complaint against defendants under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (hereafter "ADEA"), 29 U.S.C.A. sec. 621 *et seq.,* supplemental state law claims under Law No. 100 of June 30, 1959, Law No. 80 of May 30, 1976 and Article 1802 of the Puerto Rico Civil Code, based on alleged discrimination/harassment in employment because of age. (Docket No. 1).

On July 7, 2011, defendants CAICO Insurance Company, Universal/CAICO, Universal Insurance Company and Universal Group (hereafter "Universal") filed a Motion for Summary Judgment with the corresponding statement of uncontested facts and exhibits in support thereof. Defendant Universal's request for summary adjudication rests on grounds that: plaintiff Méndez–Martínez' claims regarding age discrimination prior to November 3, 2009 are time-barred for failure to timely file the required administrative charge with the Equal Employment Opportunity Commission; plaintiff lacks evidence of age discrimination so as to establish *a prima facie* case; plaintiff did not suffer and adverse employment action and was not replaced in his former position; plaintiff Méndez–Martínez voluntarily resigned from his employment with defendant Universal and there was no constructive discharge; and the supplemental state claims lack merit. (Docket No. 40).[1]

On September 9, 2011, plaintiff Méndez–Martínez filed the opposition to defendant's summary judgment with the objection to defendant's statement of uncontested facts. (Docket No. 53). Defendant

---

1. The corresponding memorandum of law in support of defendant's summary motion and the statement of uncontested facts were also filed. (Docket No. 43). The record further shows the corresponding translations of documents were submitted. (Docket No. 48). A clarification and supplemental motion as to some exhibits was thereafter submitted. (Docket No. 49).

Universal then filed, with leave of court, a response in opposition to plaintiff's filing. (Docket No. 59).

On October 26, 2011, the Court referred related non-dispositive motions regarding the parties' summary judgment filing, which were ruled upon by this Magistrate Judge as non-dispositive.[2] The Court also referred Universal's Motion for Summary Judgment for report and recommendation, as discussed below. (Docket Nos. 72 and 73).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[3]

Pursuant to the language of the applicable rule, as amended in 2010, the moving party bears the two-fold burden of showing that there is "no genuinely disputed" factual predicate. "Said party may also show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during consideration of a motion for summary judgment, Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood. . . ." *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter

---

**2.** The Court referred the motions to strike and for filing of sur-replies, including an initial filing without leave of court of excess pages to this Magistrate Judge. (Docket No. 72). Upon review of the parties' contention, the reply statement of facts that consisted of one hundred and twenty (120) additional pages was stricken from the record and no leave to file was granted to defendant. Likewise, defendant's subsequent motion for reconsideration and submitting an alleged pruned sixty three (63) page supplement and four (4) motion pages was also denied. (Docket Nos. 74 and 77).

**3.** On April 28, 2010, the Supreme Court of the United States approved amendments to Federal Rule of Civil Procedure 56, effective December 1, 2010. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases. *See Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31 (1st Cir.2011).

summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997).

## UNCONTESTED ISSUES OF FACTS

### I. DEFENDANT'S UNCONTESTED FACTS.

#### A. General.

Universal is a leading property and casually insurance company in Puerto Rico with more than thirty (30) years in business. As of 2009, Universal Group was the parent company of several subsidiaries,[4] including herein defendants CAICO and Universal Life Insurance Company, each with their own Board of Directors and corporate governance, specializing in different areas within the insurance industry. (*Deft's Uncontested ¶¶ 1–2; Exhibit I, Ms. Sary Ann Vázquez' statement*).[5]

Effective June 1, 2010, Universal Insurance, Eastern America Insurance Company, CAICO and Richport Insurance Company merged into a single entity, Universal Insurance. (Exhibit 1, ¶ 5).

Ms. Sary Ann Vázquez (hereafter "Ms. Vázquez") indicated knowing plaintiff Méndez–Martínez who used to work at CAICO as its President. Plaintiff Méndez–Martínez was hired around November of 1992 by Mr. Luis Miranda–Casañas (hereafter "Mr. Miranda"), who was born on October 11, 1937, and who held then the position of Chief Executive Officer of Universal Group. Plaintiff Méndez–Martínez, who was born on January 4, 1951, was hired when he was age forty-one (41) and Mr. Miranda, who hired him, was then age fifty-five (55). (*Deft's Uncontested ¶¶ 4–7; Exhibit I, ¶¶ 6–7; Exhibit II, Méndez–Martínez' depo., pp. 34–35* ).

By September 2002, in his employment with defendant, plaintiff Méndez–Martínez was earning $130,200.00. The following year his salary was raised to $150,200.00. (*Deft's Uncontested ¶ 9; Exhibit III, Memo 10–18–2002; Exhibit IV, Memo 8–11–2003* ).

At the beginning of 2004, plaintiff Méndez–Martínez told Mr. Miranda he wanted to leave CAICO due to an opportunity in a new venture, namely, to open his own insurance business. Mr. Miranda asked plaintiff to stay in the Company because Mr. Miranda did not want him to leave. (*Deft's Uncontested ¶ 10; Exhibit II, pp. 48–51* ). Mr. Méndez–Martínez remained at CAICO and, effective on July 1, 2004, his annual compensation was raised to $225,000.00. (*Exhibit IV, memo 7–16–2004* ).

As part of the terms of his employment with defendant, on September 2, 2004, plaintiff Méndez–Martínez executed a Retention and Deferred Compensation Agreement (hereafter "the Agreement"). (*Deft's Uncontested ¶ 12; Méndez–Martínez' depo., Exhibit II, pp. 48, 59–60; Exhibit VI–Agreement* ). The Agreement provided plaintiff Méndez–Martínez with a substantial monetary incentive designed to encourage him to remain in his employment with defendant and to assure that plaintiff Méndez–Martínez would not provide services for a competing business, engage in solicitation, or disclose confidential information of defendant.

In exchange, plaintiff Méndez–Martínez executed a non-compete clause in which he agreed that, during the period of his employment with defendant and for a term of

---

4. The subsidiaries in the Universal parent company included: Universal Insurance, Eastern America Insurance Agency, Inc., Caribbean Alliance Insurance Company, and Universal Life Insurance Company.

5. Ms. Vázquez' statement was submitted as the Vice President of Human Resources of Universal Group, Inc., and the custodian for keeping and maintaining employees' personnel files and business records of the company.

twelve (12) months after the voluntary or involuntary termination of the same, plaintiff could not engage in similar business services or activities within the territory of Puerto Rico. (*Deft's Uncontested ¶ 14; Exhibit VI*). Section 14 of the Agreement provides that, if plaintiff Méndez–Martínez breached the agreement not to compete described above, he would be held liable to defendant for a sum no less than $500,000.00 in damages. (*Id.*).

By December 2004, Mr. Miranda was Chief Executive Officer of Universal Group and plaintiff Méndez–Martínez was already Senior Vice–President for CAICO, who reported directly to Mr. Miranda. (*Deft's Uncontested ¶ 16; Exhibit II, Méndez–Martínez' depo., pp. 35–36; Exhibit I, ¶ 8*).

On August 1, 2005, Mr. Miranda promoted plaintiff Méndez–Martínez to Executive Vice–President of Underwriting ("*Subscriptions*") for CAICO. (*Deft's Uncontested ¶ 17; Exhibit II, pp. 62–63, 72–73; Exhibit VII, memo 7–27–2005*). Plaintiff Méndez–Martínez' annual base salary was increased to $191,700.00, plus $70,000.00 in expenses and other incentives and benefits. (*Exhibit VII; Exhibit VIII, E-mail 8–1–2005*).

On 2006, Mr. Méndez–Martínez for the second time renewed his approach to Mr. Miranda with entrepreneurial ideals for he wanted to leave CAICO to open his own Company. (*Deft's Uncontested ¶ 18; Exhibit II, pp. 54–55*). Mr. Miranda once more convinced plaintiff Méndez–Martínez to stay. (*Exhibit II, pp. 55–56*). Shortly thereafter, according to Mr. Méndez–Martínez, by the end of 2006, Mr. Miranda promoted him to President of CAICO. (*Id., pp. 99, 105; Exhibit IX, Memo 12–18–2006*). Plaintiff Méndez–Martínez was responsible for directing CAICO's operations. (*Exhibit I, Sary Ann Vázquez' statement ¶ 8*).

By April 2008, Mr. Méndez–Martínez' annual base salary, as CAICO's President, increased to $227,739.62. (*Deft's Uncontested ¶ 20; Exhibit X, memo 4–30–2008*). In addition to the base salary, Mr. Méndez–Martínez had other benefits such as car allowance, corporate expense account, and bonuses. On September 16, 2008, defendant granted plaintiff 100% coverage of the payment for his health insurance plan. (*Deft's Uncontested ¶¶ 21–22; Exhibit XI, memo 9–16–2008*). Plaintiffs allowance for expenses under his corporate card was of, at least, $70,000 per year. (*Exhibit VIII*).

In early 2009, plaintiff Méndez–Martínez was recognized and congratulated for achievements in 2008. (*Deft's Uncontested ¶ 23; Méndez–Martínez' depo., Exhibit II, p. 173*). On May 13, 2009, Mr. Miranda notified Mr. Méndez–Martínez that his newbase salary was augmented to $239,126.00, retroactively to April 1, 2009. (*Deft's Uncontested ¶ 23; Exhibit XII*).

Defendant Universal in its request for summary judgment also submits plaintiff Méndez–Martínez did not suffer any adverse employment action. While plaintiff Méndez–Martínez worked for defendant, there were no salary or benefits reductions before Mr. Méndez–Martínez tendered his resignation on May 27, 2009. (*Deft's Uncontested ¶ 25; Exhibit I, Sary Ann Vázquez' statement ¶ 12*). Mr. Méndez–Martínez never received any disciplinary actions. (*Deft's Uncontested ¶ 26; Exhibit I, ¶ 12*). Mr. Méndez–Martínez has stated that during the last three (3) years of employment he received multiple pay-raises. (*Deft's Uncontested ¶ 27; Méndez–Martínez' depo., Exhibit II, pp. 37, 211*).

## B. Age-based Discrimination and Harassment Claims.

Plaintiff Méndez–Martínez' complaint submits as alleged discriminatory acts: (I)

the alleged elimination and/or reduction of his duties and functions; (ii) the refusal to approve new lines of products for CAICO; (iii) the purported rumors spread in or about years 2004–2005 that Universal would be "taking over" CAICO's operations and discharging employees; (iv) the hiring and/or appointment of purportedly young employees to high level position; (v) the decision to consolidate all outings, which were individually sponsored by the various companies that form Universal Group, into one company outing for all employees; and (vi) forced resignation due to Mr. Miranda's hostile treatment. Mr. Méndez–Martínez admitted in his deposition that there is no other basis for his claim of age discrimination and harassment claims. (*Deft's Uncontested ¶ 29; Exhibit II, p. 235*).

Defendant Universal's submits for summary disposition as to above issues, the following uncontested issues:

### (i) Elimination and/or Reduction of Duties and Functions.

While plaintiff Méndez–Martínez worked for Eastern America in 2000, part of his duties as Vice–President of Underwriting included working both Personal and Commercial Lines. At the time, he reported directly to the President of the Company, Mr. Antonio Ortiz (hereinafter, "Ortiz"). (*Deft's Uncontested ¶ 30; Méndez–Martínez' depo., Exhibit II, pp. 37–38, 45–46*).

As part of a reorganization undertaken in 2000 in plaintiff Méndez–Martínez' department, the Company "divided" the department, allegedly stripping plaintiff Méndez–Martínez of Personal Lines and giving them to Mr. Carlos Bruno, while plaintiff retained Commercial Lines. (*Deft's Uncontested ¶ 31; Exhibit II, pp. 37–38, 45–46*). As part of the reorganization, the Company appointed Mr. Luis Berrios (hereafter "Mr. Berrios") as Senior Vice–President and direct supervisor of Mr. Méndez–Martínez, for which plaintiff no longer reported directly to the President of the Company but to Mr. Berrios. (*Exhibit II, pp. 37–38*). Mr. Méndez–Martínez stated his duties and responsibilities changed because Mr. Berrios assumed the role of the "boss", and plaintiff Méndez–Martínez "assumed another role that was not the same as the one he had before." (*Deft's Uncontested ¶ 32; Méndez–Martínez' depo., Exhibit II, pp. 37–38, 45–46, 48*). Plaintiff Méndez–Martínez admitted he does not know the reasons for the restructure and redistribution of these functions. He also admitted his responsibilities were reduced marginally and his job title and status as Vice–President, as well as his compensation, remained unchanged. (*Deft's Uncontested ¶¶ 33, 34; Exhibit II, pp. 46–47*).

Plaintiff Méndez–Martínez also claims that, prior to 2007, the Company began to eliminate some of CAICO' functions and transferred the same to other affiliate companies. The Company established a "Customer Service" call-center and started transferring to Mr. Berrios, Universal Insurance's President, administrative chores related to CAICO's building and eliminating part of CAICO's Marketing. (*Deft's Uncontested ¶ 35; Exhibit II, pp. 109–111, 128*). According to plaintiff, Mr. Miranda decided to establish a Customer Service "call-center" without taking into consideration how that could affect the companies, both CAICO and Universal. (*Méndez–Martínez' depo., Exhibit II, pp. 122–125*). The customer service end of the business for both CAICO and Universal was consolidated into one "call-center." (*Deft's Uncontested ¶ 36; Exhibit II, pp. 123–124*). Mr. Méndez–Martínez admitted having no knowledge as to the factors Mr. Miranda considered when he made the decision to establish the customer service "call-center." (*Deft's Uncontested ¶ 37; Exhibit II, p. 125*).

As to the responsibility for administrating CAICO's operational facilities (*i.e.* the building), Mr. Méndez–Martínez explained Universal had an employee who was responsible for the administration of said building. Initially, this administrator reported directly to Johnny Benitez (hereafter "Mr. Benitez"), the former President of CAICO. In or around 2005, Mr. Benitez told Mr. Méndez–Martínez that Universal was trying to strip him (Mr. Benitez) of the functions regarding the administration of the building. (*Deft's Uncontested ¶ 38; Méndez–Martínez' depo., Exhibit II, pp. 125–127*). In 2007, all functions related to the administration of CAICO's building were finally transferred to Mr. Luis Perez (hereafter "Mr. Perez"). (*Deft's Uncontested ¶ 39; Exhibit II, p. 128*). As of the date of Mr. Méndez–Martínez' deposition, Mr. Perez was sixty (60) years old. (*Id.*). Plaintiff Méndez–Martínez admitted he does not know why the Company decided to transfer the administration of CAICO's building to Mr. Perez. (*Deft's Uncontested ¶ 40; Exhibit II, p. 129*).

As to the alleged elimination of the functions related to Marketing, Mr. Méndez–Martínez admitted said purported incident happened in or around 2003–2004. (*Id.*). Plaintiff Méndez–Martínez admitted in his deposition that "jealousy" was the motivating factor behind the decision to strip CAICO of those functions. (*Exhibit II, p. 129*). Specifically, jealousy from part of Mr. Richard R. Schiavo (hereafter "Mr. Schiavo"), the President of Universal Life. (*Deft's Uncontested ¶¶ 41, 42; Exhibit II, pp. 129–130*).

Mr. Méndez–Martínez explained there was some kind of rivalry and jealousy amongst the officers and directors of the other sister/subsidiary companies towards CAICO because, in comparison to the other companies, CAICO generated more business and revenues. (*Deft's Uncontested ¶ 43; Méndez–Martínez' depo., Exhibit II, pp. 138–139; 129*). For that reason the other companies complained CAICO was being too competitive in the market and they wanted to strip away CAICO's functions. (*Exhibit II, pp. 113, 129*).

**(ii) Refusal to Approve New Lines of Products—Dwelling Policies.**

Around 2007, Mr. Méndez–Martínez asked Mr. Miranda for a new line of product for CAICO, namely, an insurance policy for "Walk-up" residential buildings to complement CAICO's automobile business since the sales of automobiles had declined. (*Deft's Uncontested ¶ 44; Exhibit II, pp. 110–111, 136*). Initially, Mr. Miranda denied the request for the new product line. (*Exhibit II, pp. 110, 130*). Mr. Miranda approved plaintiff Méndez–Martínez' petition after it was submitted to the Company's Board of Directors. (*Exhibit II, pp. 110–111, 130*). Instead of assigning that new product to CAICO, the Company's Board of Directors gave it to Mr. Berrios, the President of Universal Insurance. (*Deft's Uncontested ¶ 45; Méndez–Martínez' depo., Exhibit II, pp. 111–112*). Mr. Berrios is approximately sixty (60) years old. (*Deft's Uncontested ¶ 46; Exhibit II, p. 158*). Mr. Méndez–Martínez acknowledged that, prior to his request, the other subsidiary companies had already attempted to get into that line—*i.e.* "dwelling" policy—of business. (*Exhibit II, p. 131*). Mr. Méndez–Martínez admitted having no knowledge as to the factor considered by the Company to assign the purportedly new product to Universal Insurance instead of CAICO. (*Deft's Uncontested ¶¶ 47, 48; Exhibit II, pp. 132–133*).

Mr. Méndez–Martínez claims that, on one occasion in 2008, Mr. Miranda called him because an officer from "Popular" bank was complaining that, allegedly, CAICO had sold "dwelling" policies to some customers of Popular. (*Deft's Uncontested ¶ 49; Exhibit II, pp. 113, 146–149*). In

response, Mr. Méndez–Martínez told Mr. Miranda that "they should get out" [of that line of business] and that he (Mr. Méndez–Martínez) had already instructed his personnel "to do as least as possible"; that is, to reduce the volume in "dwelling". (*Id., pp. 148–149*). According to Mr. Méndez–Martínez, Mr. Miranda agreed with him and said they should hold back "dwelling". (*Deft's Uncontested ¶¶ 50, 51; Exhibit II, pp. 148–149*).

### (iii) Rumors that Universal Would be "Taking Over" CAICO's Operations, and Terminating Employees.

Plaintiff Méndez–Martínez claims that, in or about 2004–2005, some employees started to spread a rumor that Universal would be "taking over" CAICO's operations, and dismissing CAICO's employees. (*Deft's Uncontested ¶ 52; Exhibit II, pp. 40–42, 44*). Mr. Méndez–Martínez admitted he was not threatened with discharge. (*Id., p. 265*).

### (iv) Hiring and/or Appointment of Young Employees,

Plaintiff Méndez–Martínez contends that, in or around 2003–2004, Mr. Miranda hired Mr. Schiavo to be in charge of marketing. (*Méndez–Martínez' depo., Exhibit II, pp. 72–73, 97–98*). According to plaintiff, Mr. Schiavo had no prior experience but Mr. Miranda hired him because he was young. (*Id., p. 98*). This was the first occasion in which plaintiff Méndez–Martínez felt discriminated by age. (*Id., pp. 97–98*). Plaintiff Méndez–Martínez does not know which factors Mr. Miranda considered for hiring Mr. Schiavo. The only thing plaintiff knows is that Mr. Schiavo was a friend of Mr. Miranda's son-in-law. (*Deft's Uncontested ¶¶ 54–57; Exhibit II, pp. 98–99*).

On or about May–June 2006, Mr. Miranda appointed as President of Universal Life another purportedly young employee, whom plaintiff could only recall by his nickname: "Cheka". (*Exhibit II, pp. 93,*

*94–95*). Around that time, plaintiff approached Mr. Miranda and questioned his decision to name Mr. Jose Benitez, a/k/a "Cheka", as president of Universal Life. Plaintiff's remark to Mr. Miranda was that his decision was not based on performance. (*Deft's Uncontested ¶¶ 57, 58; Exhibit II, pp. 93, 94*). According to plaintiff, Mr. Miranda was trying to gather a group of young people, with the youth to lift this business, so that his daughter (Ms. Monica Miranda) would be surrounded by young people after he (Mr. Miranda) is gone, and she ends-up running the business. (Méndez–Martínez' depo., *Exhibit II, pp. 93–96*). For that reason, Mr. Méndez–Martínez asked whether Mr. Miranda was implying that "he (plaintiff Méndez–Martínez) was no longer useful because of his age". (*Exhibit II, p. 95*). Mr. Miranda categorically responded: "no." (*Deft's Uncontested ¶ 59; Exhibit II, p. 95.*). Mr. Méndez–Martínez' interpretation of the conversation was that Mr. Miranda wanted young people; that he would only give opportunities to young people. (*Exhibit II, p. 96*). Plaintiff Méndez–Martínez made fun of Mr. Miranda stating that "he [Plaintiff] was no 'spring chicken … but that is alright, no problem … I am going to use a little of Miss Clairol and a little of Botox to see if this changes' ". (*Deft's Uncontested ¶ 60; Exhibit II, pp. 96–97*).

Plaintiff Méndez–Martínez admitted the above incident was the second time he felt discriminated because of his age. (*Deft's Uncontested ¶ 61; Exhibit II, p. 97*). Still, about six (6) or seven (7) months after the alleged conversation took place, Mr. Miranda announced Mr. Méndez–Martínez' promotion as President of CAICO. (*Id., pp. 99, 105*). Plaintiff Méndez–Martínez was promoted to President at the age of fifty-five (55). (*Deft's Uncontested ¶ 62; Exhibit II, pp. 6, 99, 105; Exhibit IX, letter 12–18–2006*).

Plaintiff Méndez–Martínez also made reference to Ms. Maria Vale's (hereafter "Ms. Vale") appointment as Vice President of Underwriting. (*Méndez–Martínez' depo., Exhibit II, pp. 180–181* ). Ms. Vale was born on May 25, 1968. (*Deft's Uncontested ¶ 63; Exhibit I, Sary Ann Vázquez' statement at ¶ 9* ).

Mr. Miranda "announced" Ms. Vale's appointment as Vice President on Monday, May 25, 2009, just two (2) days before plaintiff Méndez–Martínez tendered his resignation. (*Deft's Uncontested ¶ 64; Exhibit II, pp. 184–185* ). Plaintiff never had to give any kind of training to Ms. Vale. (*Id., p. 181* ). Mr. Miranda never asked plaintiff Méndez–Martínez to give any training to Ms. Vale. (*Exhibit XIII, Luis Miranda Casañas' statement* ). Mr. Miranda never told plaintiff Méndez–Martínez that Ms. Vale would be his replacement nor did he eliminate any of Méndez–Martínez' duties or functions to transfer them to Ms. Vale or any other young employee. (*Deft's Uncontested ¶ 65; Exhibit XIII* ).

### (v) Consolidation of Outings for all Employees.

According to plaintiff Méndez–Martínez, CAICO's company outing was an exclusive event, offered only to CAICO's employees as an incentive for achieving production goals. (*Méndez–Martínez' depo., Exhibit II, pp. 133, 134–135* ). Universal and the other subsidiaries had their own outings. (*Exhibit II, pp. 139–140* ). Instead of having different segregated outings, in or around February–April 2009, the Company consolidated them into one integrated outing for all employees. (*Deft's Uncontested ¶¶ 66, 67; Exhibit II, pp. 139–141, 145* ). Plaintiff does not know the reasons for consolidating all outings, as he was not involved in the decision making process. (*Deft's Uncontested ¶ 68; Exhibit II, p. 145* ).

Defendant Universal discussed for summary judgment plaintiff Méndez–Martínez' allegations as to instances when he felt discriminated for comments about age, including its reference to comments to which plaintiff made reference of no longer being a "spring chicken." Plaintiff Méndez–Martínez has alleged that, on the day after it was decided to consolidate the Company's outings in 2009, he met with Mr. Miranda and his daughter, Ms. Monique Miranda (hereafter "Ms. Miranda"), and inquired about their future plans for CAICO, as well as for him. In that meeting, Mr. Méndez–Martínez expressed some concern about his future, as well as CAICO's future, with the Company as he understood they continued taking away functions, consolidated the "outing", and did not give him the purported new product. According to plaintiff Méndez–Martínez, he was concerned because he was no "spring chicken", he was no longer a kid, and Mr. Miranda had allegedly spoken to him on various occasions about an alleged issue of youth. Plaintiff Méndez–Martínez added he did not know what it was they wanted but, if they were going to bring in young people, they should tell him because he was no longer a "spring chicken." (*Deft's Uncontested ¶¶ 69, 70; Exhibit II, p. 157* ). For those reasons, plaintiff specifically asked them if they wanted him to leave the Company or if they were going to terminate him. (*Méndez–Martínez' depo., Exhibit II, pp. 157–158* ). The reply, as plaintiff Méndez–Martínez recognized, was: "[n]o you know that we are counting with you". (*Deft's Uncontested ¶ 71; Exhibit II, pp. 157–158, 159* ).

### (vi) Alleged Constructive Discharge and/or Hostile Treatment.

Plaintiff Méndez–Martínez alleges he felt discriminated and they wanted to take him out because of Mr. Miranda's treatment and comments. (*Id., pp. 153–155* ).

This was allegedly supported when around April 2009, Mr. Miranda, the CEO of the Company, started to visit CAICO's offices more frequently which plaintiff Méndez–Martínez characterized as a "hostile attitude." (*Deft's Uncontested* ¶¶ *72, 73; Exhibit II, pp. 153, 155* ). Mr. Miranda's alleged hostile attitude consisted of: (I) plaintiff's perception that Mr. Miranda was not greeting him with a handshake as frequently as before; (ii) the purported "fact" that Mr. Miranda was being accompanied by a bodyguard; and (iii) certain remarks allegedly made by Mr. Miranda. (*Deft's Uncontested* ¶ *74; Exhibit II, pp. 157–158, 163–165* ).

Plaintiff Méndez–Martínez admitted in his deposition the following: he does not know why Mr. Miranda decided to visit the office more frequently (*Deft's Uncontested* ¶ *75; Exhibit II, p. 155* ); he does not know why an alleged bodyguard was escorting Mr. Miranda. (*Exhibit II, p. 164* ); and that, before he tendered his resignation, he did not know that the person accompanying Mr. Miranda was, in fact, a bodyguard. Plaintiff learned about Mr. Miranda's alleged bodyguard about five (5) to six (6) months after he resigned. (*Deft's Uncontested* ¶ *76; Exhibit II, p. 180, 193–196* ).

As to the alleged remarks, plaintiff Méndez–Martínez claims Mr. Miranda commented that Ms. Vale would be the person who would make a difference in the Company, she had his entire confidence, and she had the youth he needed to carry out the changes he wanted to make in the Company. (*Exhibit II, p. 165* ). Plaintiff also avers that, on one occasion, Mr. Miranda referred to Mr. Soto as being an old fat guy (*"el viejo gordo ese"*), and told plaintiff he did not want Mr. Soto at the Company outing. (*Id., p. 174* ). Mr. Miranda also referred to Mr. Luis Forteza (hereafter "Mr. Forteza") as a "kid" (*"el muchachito ese"* ) and that he was not going to the outing either. (*Deft's Uncontested* ¶¶ *77, 78; Exhibit II, pp. 174, 176* ).

### (vii) Plaintiff Méndez–Martínez' Resignation and/or Alleged Dismissal.

According to plaintiff Méndez–Martínez, on Wednesday, May 27, 2009, after taking his car to the shop, he arrived at the office approximately at 9:30 a.m. As he walked in, an employee told plaintiff that Mr. Miranda was in Mr. Méndez–Martínez' office, waiting for him, because he wanted to see him. (*Méndez–Martínez' depo., Exhibit II, pp. 184–186* ). Plaintiff Méndez–Martínez claims that, when he asked Mr. Miranda how he was doing, Mr. Miranda responded "bad" (*"mal"* ) and, allegedly said that CAICO's employees were a bunch of laid backs (*"un chorro de enagotaos"* ); good-for-nothing employees (*"porquerí a de empleados"* ), that CAICO was a good-for-nothing Company (*"trapo de porquerí a de compañía"* ), and that he was tired of the culture of this little operation. (*Exhibit II, pp. 187–188* ). Plaintiff took offense on Mr. Miranda's remarks, as he understood such remarks reflected on him as CAICO's President. (*Exhibit II, pp. 187–188* ). In light of these remarks, plaintiff Méndez–Martínez asked Mr. Miranda what he wanted to do, but Mr. Miranda did not answer. Instead, Mr. Miranda said he had a meeting to attend and left. (*Exhibit II, pp. 188–189, 202* ). Plaintiff claims Mr. Miranda left him with the words hanging. (*Deft's Uncontested* ¶ *82; Exhibit II, id.* ).

In the meeting with Mr. Miranda, on the morning of May 27, 2009, plaintiff Méndez–Martínez did not ask Mr. Miranda if he wanted him to leave the Company. (*Exhibit II, p. 202* ). Plaintiff stated at that time, he did not know why Mr. Miranda was angry or why he made such remarks, and Mr. Miranda never said if something had troubled him. (*Exhibit II,*

*pp. 186–187, 189* ). According to plaintiff, Mr. Miranda simply made those remarks for no apparent reason. (*Deft's Uncontested ¶¶ 83, 84; Exhibit II, id.*).

A while later, Mr. Forteza told plaintiff on the morning of May 27th, Mr. Miranda barged into Mr. Forteza's office accompanied, slammed a fist on his desk, and used foul language while the door was open. (*Exhibit II, p. 189* ). Mr. Forteza also said he did not know if something was wrong with Mr. Miranda, but that he was leaving the company. (*Id.*, pp. 189–190, 196). Mr. Forteza tendered his resignation on May 27, 2009. (*Exhibit XIV, Forteza's letter 5–27–2009* ). On that date, Mr. Soto also tendered his resignation to plaintiff. (*Exhibit II, p. 197; Exhibit XV, Soto's letter 5–27–2009* ). Plaintiff Méndez–Martínez attempted to persuade both Mr. Forteza and Mr. Soto to reconsider their resignations and convince them to stay at the Company. (*Deft's Uncontested¶¶ 85–88; Méndez–Martínez' depo., Exhibit II, pp. 197–198* ).

Plaintiff Méndez–Martínez admitted the alleged incident with Mr. Miranda on May 27, 2009 was motivated by "jealousy" "because it cannot be anything else". (*Deft's Uncontested ¶ 89; Exhibit II, p. 198* ). The incident that caused Mr. Forteza's resignation was the alleged confrontation between Mr. Miranda and Mr. Forteza on the morning of May 27, 2009. (*Exhibit II, pp. 198–199* ). Plaintiff explained Mr. Soto resigned because he learned that Mr. Forteza had resigned and decided to do the same. (*Deft's Uncontested ¶ 90; Exhibit II, p. 199* ). By noon, both Mr. Forteza and Mr. Soto had tendered their resignations to plaintiff Méndez–Martínez. (*Exhibit II, p. 201* ). Plaintiff then informed Ms. Vázquez of said fact. (*Exhibit II, pp. 196–197* ).

After having lunch with an agent on same date, plaintiff Méndez–Martínez spoke with his wife, Diana Collazo (hereafter "Ms. Collazo"), on the phone before he made the decision to resign. (*Exhibit II, p. 206* ). According to Mr. Méndez–Martínez, he told Ms. Collazo he thought he was going to be terminated on that day or the next; that "one of these days this people are going to take me out". (*Id.*). Plaintiff Méndez–Martínez told his wife he wanted no more problems with her due to the long hours he was devoting to his work. (*Exhibit II, p. 207* ). Plaintiff's wife said she would back him up no matter what he decided. (*Deft's Uncontested ¶ 92; Exhibit II, pp. 203, 207–208* ).

Mr. Méndez–Martínez further alleged in his deposition that, in or around the previous six (6) to seven (7) months, he started to have a feeling (*"unpresentimiento"*) that they were going to "take him out". (*Méndez–Martínez' depo., Exhibit II, pp. 221–222* ). Based on the forgoing perception, at around 4:00 p.m., Mr. Méndez–Martínez instructed his secretary to prepare his letter of resignation and call Mr. Miranda's office to request a meeting. (*Exhibit II, pp. 203, 208* ). According to plaintiff Méndez–Martínez, "his resignation was prompted by an issue of indignation". (*Deft's Uncontested ¶¶ 93–94; Exhibit II, pp. 120, 226* ).

On May 27, 2009, Ms. Vázquez was at the office of Ms. Josely Vega (hereinafter, "Ms.Vega"), Vice President and Chief Legal Officer of Universal, when she received a call from plaintiff Méndez–Martínez informing Mr. Forteza's resignation. (*Exhibit II, pp. 196–197; Exhibit I, Ms. Vázquez' statement, ¶ 13* ). Both Ms. Vega and Ms. Vázquez went to Mr. Miranda's office, and informed him of Mr. Forteza's resignation. (*Exhibit I, ¶ 14* ). While Ms. Vázquez and Ms. Vega were at Mr. Miranda's office, Ms. Ileana Valencia, Mr. Miranda's Secretary, received a call on behalf of plaintiff Méndez–Martínez requesting a meeting with Mr. Miranda.

(*Deft's Uncontested* ¶¶ *96–98; Exhibit II, pp. 203, 208; Exhibit I,* ¶ *14* ).

According to plaintiff Méndez–Martínez, when he arrived, Ms. Miranda and Ms. Vega where already present at Mr. Miranda's office. (*Exhibit II, pp. 211–212* ). Immediately, Mr. Miranda invited plaintiff in the office and asked how were things going. (*Exhibit II, p. 212* ). Plaintiff Méndez–Martínez said "here is my letter of resignation" and handed it to Mr. Miranda. (*Méndez–Martínez' depo., Exhibit II, p. 216* ). Mr. Miranda became upset when plaintiff Méndez–Martínez tendered his resignation. (*Exhibit II, p. 212* ). Mr. Miranda told plaintiff: "I am going to take this [the enforcement of plaintiff's non-compete agreement] to the ultimate frontier, I want you to know that right now". (*Id.*). "I am going to take this and you will not be able to work anywhere". (*Id.*). Mr. Miranda stood-up and, as he was about to leave his office, he asked Mr. Méndez–Martínez to "leave". Immediately, Mr. Miranda left his office and went into another conference room. (*Deft's Uncontested* ¶¶ *99–100; Exhibit II, pp. 212, 216–217* ).

According to plaintiff Méndez–Martínez, once Mr. Miranda left the office, both Ms. Miranda and Ms. Vega asked plaintiff twice to think it over and reconsider his position. (*Deft's Uncontested* ¶ *101; Exhibit II, pp. 212–213, 218* ). Plaintiff alleges he told them he would think it over and left the office. (*Exhibit II, pp. 213, 218* ). Plaintiff Méndez–Martínez called his wife, Ms. Collazo, and told her they had just threatened him with the noncompete agreement, but that Ms. Miranda asked him to reconsider. (*Exhibit II, p. 213* ). After consulting with his wife, plaintiff Méndez–Martínez decided to withdraw his resignation. (*Id.*). Plaintiff Méndez–Martínez informed both Ms. Miranda and Ms. Vega he had reconsidered his position as to his resignation. (*Exhibit II, pp. 213,*

*214* ). However, according to plaintiff Méndez–Martínez, when he approached Mr. Miranda to attempt to withdraw his resignation, Mr. Miranda told him that he was dismissed. (*Deft's Uncontested* ¶ *103; Exhibit II, p. 223* ). According to plaintiff Méndez–Martínez, he was not even able to say two (2) words before Mr. Miranda allegedly dismissed him. (*Id.*).

As Universal's CEO and main shareholder, and plaintiff Méndez–Martínez' direct supervisor, Mr. Miranda was the only official in the Company authorized to reject or accept the withdrawal of plaintiff's resignation. (*Deft's Uncontested* ¶ *104; Exhibit II, pp. 217, 224* ). Plaintiff Méndez–Martínez admitted he does not know why Mr. Miranda did not want to accept his reconsideration. (*Méndez–Martínez' depo., Exhibit II, p. 235* ). Subsequently, Ms. Vega informed Ms. Vázquez about plaintiff Méndez–Martínez' resignation and asked Ms. Vázquez to prepare an exit interview. (*Exhibit I, Ms. Vázquez' statement* ¶ *15* ). During the exit interview, plaintiff Méndez–Martínez told Ms. Vázquez he did not feel at ease ("*có modo* "), he had great appreciation for Mr. Miranda, and he preferred to resign if Mr. Miranda was not happy with his performance. (*Deft's Uncontested* ¶¶ *104–107; Exhibit I,* ¶ *15; Exhibit XVI, Méndez–Martínez' resignation letter 5–27–2009* ).

Plaintiff Méndez–Martínez' retaliation claim is premised on the alleged rumors Universal was going to "take over" CAICO's operations and discharge CAICO's employees; the way that things were handled, making foul remarks about the employees; and the elimination of one position. (*Deft's Uncontested* ¶ *108; Méndez–Martínez' depo, Exhibit II, pp. 264, 265* ). Plaintiff admitted he was not threatened with discharge, and the alleged "take over" was nothing more than gossip spread by some employees and other agents, who

were not employees of Universal. (*Deft's Uncontested ¶ 109; Exhibit II, pp. 40–42, 44, 265*).

As previously mentioned, the day plaintiff tendered his resignation, Mr. Miranda allegedly said that CAICO's employees were a bunch of laid backs ("*un chorro de eñagotaos*") and good-for-nothing employees ("*porqueria de empleados*"), that CAICO was a good-for-nothing Company ("*trapo deporquerí a de compañia*"), and that he was tired of the culture of this little operation. (*Exhibit II, pp. 187–188*). On one occasion Mr. Miranda referred to Mr. Soto as being old and fat ("*el viejo gordo ese*"), and told plaintiff Méndez–Martínez he did not want Mr. Soto on the Company outing. (*Exhibit II, pp. 187–188*). Mr. Miranda also referred to Mr. Luis Forteza as a "kid" ("*el muchacito ese*") and that he was not going on the outing either. (*Exhibit II, pp. 174, 176*).

As to the alleged elimination of a position, plaintiff Méndez–Martínez simply did not specify to whom or what position he was referring. (*Exhibit II, p. 265*). Plaintiff Méndez–Martínez never made a complaint about age discrimination in the Company. (*Deft's Uncontested ¶ 113; Exhibit II, p. 250*). According to plaintiff, he "might have" said something about his age to Mr. Miranda and Ms. Miranda on two (2) occasions; the first being during a meeting with Mr. Miranda early in 2006, when a purportedly young employee (Mr. Schiavo) was named President of a sister company: Universal Life. (*Deft's Uncontested ¶ 114; Exhibit II, pp. 250, 251; 72–73, 98–99*). In that first event, plaintiff Méndez–Martínez asked Mr. Miranda to tell him if they had appointed that employee because of his age, Mr. Miranda did not respond. (*Deft's Uncontested ¶ 115; Exhibit II, pp. 250, 251*). In that meeting, plaintiff told Mr. Miranda that he (plaintiff) was no "spring chicken" and if Mr. Miranda wanted him to leave the Company

he (Mr. Miranda) should tell him so. According to plaintiff, Mr. Miranda did not respond. (*Id.*). The second occasion plaintiff Méndez–Martínez mentioned something related to his age to Mr. Miranda and Ms. Miranda was during a meeting early in 2009, when plaintiff reiterated he was no "spring chicken", and if they wanted him to leave the Company they should tell him so. (*Exhibit II, p. 251*). This time, Ms. Miranda and Mr. Miranda answered: "[n]o you know that we are counting with you". (*Exhibit II, p. 159*).

It is defendant Universal's submission plaintiff Martínez–Méndez was not replaced by a younger employee. Universal did not recruit any person to replace plaintiff Méndez–Martínez in his former position. After plaintiff Méndez–Martínez resigned, Mr. Miranda assumed plaintiffs responsibilities in addition to his own duties and responsibilities. Effective June 1, 2010, Universal Insurance Company, CAICO and other affiliate companies merged and Universal Insurance Company was the surviving corporation as the regulations of the Insurance Commissioner changed to allow said move. As such, at that time, the President and CEO of Universal Insurance Company assumed the leadership of CAICO's operations. (*Deft's Uncontested ¶¶ 117, 118; Exhibit I, at ¶ 16*).

Insofar as the administrative filing of an age discrimination claim with the state ADU/EEOC, plaintiff Méndez–Martínez filed on November 3, 2009, a charge in the Equal Employment Opportunity Commission (hereafter "EEOC") against Universal for age discrimination, harassment, hostile work environment and retaliation. (*Deft's Uncontested ¶ 119; Exhibit XVII, ADU/ EEOC charge 11–3–2009*).

Defendant Universal also made reference to plaintiff Méndez–Martínez' work

history after his resignation in CAICO, for plaintiff had referred to retaliation upon being sued for having engaged in work related activities as a breach of the Agreement with defendant. In July 2009, plaintiff Méndez–Martínez began working as Vice–President of Underwriting ("*Suscripciones*") and Marketing in Integrand, until January 21–22, 2010. (*Deft's Uncontested ¶ 120; Exhibit II, pp. 7, 30–31*). As Vice–President of Underwriting and Marketing in Integrand, Mr. Méndez–Martínez was responsible for the business, production, and branches. (*Exhibit II, p. 21*). At Integrand, plaintiff worked with basically the same line of products, such as automobile insurance, property insurance ("property casualty"), and personal and commercial lines as with defendant Universal. (*Deft's Uncontested ¶ 120, 121; Exhibit II, p. 21–22*). Mr. Méndez–Martínez reported directly to Mr. Victor Salgado, President of Integrand. (*Id., pp. 22, 23*).

At the time of deposition in this case, plaintiff Méndez–Martínez was working as Vice–President of Operations in Cooperativa de Seguros Multiples (hereafter "CSM"). Plaintiff began working Vice–President in CSM on January 21 or 22, 2010. (*Exhibit II, pp. 6–7*). As Vice–President of Operations, plaintiff was responsible for underwriting, reinsurance ("*re-aseguro*"), sales, and among other things, the coordination with the savings and credit cooperatives ("*cooperativas de ahorro y credito*"). (*Deft's Uncontested ¶¶ 123, 124; Exhibit II, pp. 7, 19–20*). Mr. Méndez–Martínez reports directly to the President of CSM, Roberto Castro, Esq. In turn, the following employees report directly to Mr. Méndez–Martínez: Elizabeth Wjona, Underwriting Manager; Oscar Medrano, in Promotions; Ingrid Tirado, in Specialty Lines; and Carmen Clemente, Underwriting Manager. (*Exhibit II, pp. 7–8*).

In his current employment, Mr. Méndez–Martínez works all types of insurance such as; "Property Casualty", which includes insurance for automobile, home, dwelling, building, property, hazard (*i.e.* hurricanes and earthquakes), and other lines managed by cooperatives and financial institutions. (*Deft's Uncontested ¶ 125; Exhibit II, pp. 20–21*).

## II. PLAINTIFF MÉNDEZ–MARTÍNEZ' UNCONTESTED FACTS.[6]

Plaintiff Méndez–Martínez filed his response to above defendant Universal's uncontested facts and the corresponding memorandum of law. Plaintiff Méndez–Martínez admitted the majority of the items of defendant Universal's uncontested issues of material facts and qualified those he deemed necessary.

In summary, defendant's uncontested ¶¶ 1–7, 11–12, 15, 17–22, 24, 26–27, 30–47, 52–55, 62, 66–67, 78–80, 82, 84, 97–99, 111, 119, 122–123 and 125 were admitted. (Docket No. 53). Plaintiff submits as additional findings reference to the Agreement in regard to the non-competition clause and the parties mutual covenants.[7] Plaintiff Méndez–Martínez has made reference

---

6. Plaintiff Méndez–Martínez submitted an Additional Statement with Docket No. 53, hereinafter referred as "Plaintiff ¶ or ¶¶" with the corresponding submissions. (Docket No. 53-1).

7. Defendant Universal thereafter filed a reply memorandum indicating plaintiff had only denied twenty-three (23) of the one hundred and twenty five (125) uncontested facts and had

qualified some forty-four (44) items with an attached affidavit that is not consonant with the supporting document of uncontested facts. The Court takes notice that defendants' uncontested facts are based primarily on plaintiff Méndez–Martínez' own deposition testimony and on business record and/or official documentation, for which no credibility issues are presented. (Docket No. 59).

also to some retaliation events which are subsequent to the employment relation with defendant Universal and need not be addressed as to the age discrimination claim.

Plaintiff Méndez–Martínez qualified the responses to uncontested issues submitted by defendant Universal on the relevant issues to summary adjudication insofar as:

Plaintiff Méndez–Martínez told Mr. Miranda since the beginning of 2004 he wanted to leave for an opportunity to open a new business, even speaking with Mr. Miranda to provide financing. Plaintiff continued working with defendant and did not open any business. (*Plaintiff's ¶ 10; Exhibit 2, Méndez–Martínez' depo., pp. 51–54*).

Since September of 1992 until the date of employment termination, plaintiff Méndez–Martínez reported directly to Mr. Miranda, as well as to Ms. Miranda and to Ms. Vázquez, who are approximately thirty-five (35) years of age. (*Plaintiffs ¶ 16; Exhibit 1, Méndez–Martínez' sworn statement ¶ 5*).

It is plaintiff Méndez–Martínez' contention he did not resign from his position, but rather that he was discharged by Mr. Miranda on May 27, 2009. (*Plaintiffs ¶ 25; Exhibit 1, ¶ 7*).

In addition to the discriminatory actions described in the Complaint, Mr. Miranda informed plaintiff he had appointed Ms. Vale, who was approximately thirty-three (33) years old, as Vice President of CAICO. Mr. Miranda excluded plaintiff from the decision making process in regards to the hiring and appointment of employees to high management positions at CAICO, specifically in regards to Ms. Vale. Mr. Miranda also appointed Mr. Benítez as President of Life Insurance and Mr. Romero as Auditor, without consulting plaintiff. (*Plaintiff's ¶ 28; Exhibit 1, ¶ 9; Exhibit 2, pp. 158, 160*).

Starting in April 2009, Mr. Miranda made comments of hiring young people because he wanted a group of young persons working with his daughter, Ms. Miranda, and wanted to leave in place a staff of young people to work with his daughter. (*Exhibit 1, ¶ 11; Exhibit 2, pp. 187–189*). Mr. Miranda also stated the day of plaintiffs employment termination that CAICO's employees were a mess, he would not tolerate it any more. (*Id.*).

Mr. Miranda replaced plaintiff Méndez–Martínez, who was fifty-eight (58) years old, with Ms. Vale, who was approximately thirty-three (33) years old and younger than plaintiff, with less seniority and experience. (*Plaintiff's ¶ 28; Exhibit 1, ¶ 13*).[8]

Plaintiff Méndez–Martínez submits the not assignment of new product to CAICO and thus to Méndez–Martínez, was due to his age. (*Plaintiff's ¶ 48, Exhibit 2, pp. 157–158*).[9]

Plaintiff Méndez–Martínez denies making fun of Mr. Miranda's comment as to

---

**8.** On these issues ¶¶ 28 and 58–60, which at first impression seem to present some credibility questions as to plaintiff Méndez–Martínez being replaced by a younger individual (Ms. Vale), and thus to age discrimination claim, there are no undisputed facts since the submissions are not supported by plaintiff's personal knowledge or any supporting documents but rather by a sworn statement of Mr. Méndez–Martínez (Exhibit 1) that contradicts plaintiff's own deposition testimony and clear business records as attested to by defendant Universal. *See Orta–Castro v. Merck, Sharp &*

*Dohme Química P.R., Inc.*, 447 F.3d 105 (1st Cir.2006) (statement provided solely to create an issue of fact, which contradicts deposition testimony, without a satisfactory proffered explanation, may be disregarded in summary judgment).

**9.** Plaintiff Méndez–Martínez' deposition further states in the same pages referred to his conversation regarding age that the new product was instead given to Mr. Berrios at Universal, who was sixty (60) years old.

hiring young people and he not being a "spring chicken, use of a little Miss Clairol and Botox". (*Plaintiffs ¶¶ 58–60; Exhibit 1, ¶¶ 15–18*).

Plaintiff's deposition provides on this issue the following:

A ... I [Mr. Méndez–Martínez] told him, "well, I'm no spring chicken but, um ... but alright, no problem." I remember that I told him, [Mr. Miranda] "I'm going to use a little Miss Clairol and get a little Botox to see if this changes," I remember that joke just as I remembered it now. I told him, "only her hairdresser knows." Miss Clairol, that was the commercial that they had.

Q Yes.

A I remember because of that, because I made a joke about it.

Insofar as the hostile attitude of Mr. Miranda attributed to age discrimination, plaintiff Méndez–Martínez submits in his additional statement of facts in controversy events such as: plaintiff not participating in the selection, appointment or decision making process in the hiring of officers, such as Ms. Vale, and another young individual at CAICO, being one of the functions and duties taken away from plaintiff; Mr. Miranda starting to visit CAICO's office on a daily basis; Mr. Miranda being accompanied at CAICO's facilities by an armed bodyguard; Mr. Miranda's actions against other officers of CAICO, to wit; Mr. Forteza and Mr. Soto, who resigned from the company because of the hostile work environment. (*Plaintiff's ¶¶ 68–76; Exhibit 1; Exhibit 2, pp. 157–161, 162–164, 178*).

Plaintiff Méndez–Martínez' deposition shows the hostile work environment resulted from: recruitment at the time was made through Human Resources, for which plaintiff was not consulted as to appointment of personnel; a retirement window was offered at the Company, as it had been done in another insurance company Nationwide, and many of Universal's employees with more seniority took it and retired, their positions being left open sometimes and others were filled; Mr. Miranda began to visit the offices every day for about an hour and then left; sometimes Mr. Miranda would not extend his hand to greet as he usually did; plaintiff did not know why Mr. Miranda needed a bodyguard since he was inside his own business building; Mr. Miranda's attitude towards Mr. Forteza and the cause thereafter of Mr. Soto's resignation upon having knowledge of Mr. Forteza's resignation on May 27, 2009, the same day plaintiff also decided around 4:00 p.m. to submit his resignation letter upon consultation with his wife; Mr. Miranda's refusal to allow plaintiff to withdraw his former written resignation which amounted to dismissal on the same date since plaintiff had already reconsidered his resignation and had so informed Ms. Miranda and Ms. Vega that he was going to stay at his job with Universal. (*Exhibit 2, pp. 160–165, 177–183, 187–191, 196–200, 203, 205–207, 212–214*).

Plaintiff Méndez–Martínez seeks through his sworn statement, Exhibit 1, to contest his own deposition testimony by stating: plaintiff did not resign from the position, but was discharged by Miranda on May 27, 2009 (*Exhibit 1, ¶¶ 7, 22*); plaintiff was replaced by Ms. Vale, a younger person with less seniority and experience (*Id.¶ 17*); plaintiff never made fun of Miranda's comment and understood same were discriminatory because of age, referring to the "little Miss Clairol and a little of Botox"—the spring chicken conversation (*Id., ¶ 19*); felt discriminated because of age because of Miranda's comments and actions in taking away his functions, hiring young people, not allowing him to sell new products, hiring of Ms. Vale to replace him, actions in excluding him from the

decision making regarding employees hired. (*Exhibit 1, ¶ 24–30* ).

On the same grounds referred to in footnote 8, plaintiff's new modified statements included in his sworn statement, through which he is now attempting to create issues of facts in controversy as to defendant's uncontested issues, will be disregarded on certain issues.[10] Only those statements, not the whole sworn statement submitted as Exhibit 1, which are contrary to plaintiff Méndez–Martínez' prior testimony, without an adequate explanation for offering a new version of facts, are herein considered as not raising genuine issues of material fact in controversy for summary judgment.

Plaintiffs sworn statement also provides grounds for alleged acts of discrimination and for having then complained to Mr. Miranda in 2006 when a young employee was hired. Exhibit 2, ¶ 50. A further discussion as to defendant Universal's submission that any such claim would be barred, will be discussed hereinafter.[11]

Plaintiff Méndez–Miranda submits he understood Mr. Miranda's comments as to CAICO's employees [12] as having made directly to him for being the President of CAICO, feeling humiliated. (*Plaintiff's ¶¶ 81, 83; Exhibit 2, pp. 188, 189, 203* ).

Plaintiff Méndez–Martínez submits that, in an attempt to have Mr. Soto and Mr. Forteza to stay in the company, plaintiff told them the incident with Mr. Miranda must have been motivated by jealousy, since it could not be anything else. (*Plaintiff's ¶¶ 88, 89* ).

Plaintiff attempts to clarify the decision to resign was due to indignation which had started several months before, not something sudden. The resignation was also motivated because Mr. Miranda was going to pay him the amount of one million dollars as had been agreed upon in the Agreement. (*Plaintiffs ¶¶ 93–94; Exhibit 2, pp. 220–222, 265–269; Exhibit 1, ¶ 42* ).

During plaintiff's conversation with Mr. Miranda prior to his resignation, plaintiff told him about the contract and business agreement and asked what was Mr. Miranda going to do about that. Mr. Miranda's reply was that, if plaintiff wanted to resign, prepare and place the resigna-

**10.** A district court is not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 6 (1st Cir. 1994) (a party resisting summary judgment may not rest on mere allegations or denials, but must identify and allege specific facts showing a genuine issue for trial); *Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 10 (1st Cir.2007). This is particularly true where, as here, plaintiff Méndez–Martínez submitted as part of his objection to Universal's Motion for Summary Judgment an affidavit, Exhibit 1, to Docket No. 53, in which he contradicts his own deposition testimony (Plaintiff's Exhibit 2; Defendant's Exhibit II) and asserts what amounts to nothing more than self-serving, factually-devoid declarations. *See Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir.2001) ("a party opposing summary judgment may not manufacture a dis-

pute of fact by contradicting his earlier sworn testimony"); *Orta–Castro v. Merck*, 447 F.3d at 110. *See Torrech–Hernandez v. General Elec. Co.*, 519 F.3d 41 (1st Cir.2008).

**11.** Plaintiff's administrative complaint of age discrimination was filed in November of 2009.

**12.** Mr. Méndez–Martínez' deposition refers to Mr. Miranda's comment about CAICO employees as being "bad" ("*mal* ") and, allegedly, saying that CAICO's employees were a bunch of laid backs ("*un chorro de eñagotaos* "); good-for-nothing employees ("*porqueria de empleados* "), that CAICO was a good-for-nothing Company ("*trapo de porqueria de compania* "), and that he was tired of the culture of this little operation. (*Méndez–Martínez' depo. pp. 187–188* ). Still, these comments, taken as true, do not relate to any reference as to age.

tion letter and leave and they will deal with the Agreement. Plaintiffs understanding was he would be paid what was agreed in the Agreement, one million dollars and he prepared and submitted his resignation letter. (*Plaintiff's ¶ 95–96; Exhibit 1, ¶¶ 43–44; Exhibit 2, pp. 265–269* ).[13] Upon plaintiff having tendered his letter of resignation, Mr. Miranda told him he would take it to the ultimate consequences but did not make any reference to the no-competition Agreement. (*Plaintiffs ¶ 100; Exhibit 2, pp. 212–213* ).

After Mr. Miranda left the room upon plaintiff submitting his resignation, Ms. Miranda and Ms. Vega asked plaintiff to reconsider. Plaintiff submits he reconsidered his decision to resign and immediately told them he would remain working at CAICO. (*Plaintiff's ¶ 101; Exhibit 2, pp. 213–214, 218* ). Plaintiff submits that, upon having informed Ms. Miranda and Ms. Vega about his decision to withdraw his resignation, they accepted it and he considers they both had the authority to do so for they did not need the approval of Mr. Miranda nor the Board and they did not tell plaintiff they needed Mr. Miranda's or the Board's approval. (*Plaintiffs ¶ 104; Exhibit 2, pp. 246–248* ).[14]

To this effect, plaintiff submitted a sur-reply brief (Docket No. 75) in regards to the authority of Ms. Miranda and Ms. Vega as perceived by plaintiff to allow withdrawal of his resignation, which is in reference to defendant's reply brief which plaintiff requested to be stricken (Docket No. 66). Since in fact defendant's response was stricken by the Court (Docket Nos. 61 and 74), plaintiff sur-reply is considered moot. In any event, whether other management employees besides Mr. Miranda were authorized to allow plaintiff to withdraw his written resignation, there is no connection of this act with a discriminatory animus as explained below.

Plaintiffs submission of his wife's statement, Ms. Collazo, was objected by defendant as inadmissible and based on double hearsay. (Docket No. 76). As said statement is based solely on what plaintiff Méndez–Martínez told her, it is not admissible nor serves the purpose for summary judgment. *See Lujan v. National Wildlife Fed'n.*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Vázquez v. Lopez–Rosario*, 134 F.3d 28, 33 (1st Cir.1998) ("[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment"); Fed. R.Civ.P. 56(e): *FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1110 (1st Cir.1986). As such, plaintiff's ¶¶ 102–103 which are based on Ms. Collazo's hearsay statement need not be entertained.[15]

---

**13.** Plaintiff Méndez–Martínez' admission and statements further support defendant Universal's uncontested fact that he indeed resigned from his job upon presentation of a written letter of resignation on May 27, 2009 to Mr. Miranda in the presence of Ms. Miranda and Ms. Vega. Plaintiff's arguments as to dismissal from employment are based on defendant, in particular Mr. Miranda, not accepting thereafter his decision to withdraw the resignation.

**14.** Review of plaintiff's deposition on the issue of Ms. Miranda and Ms. Vega fails to support this contention. Translations submitted as to plaintiff's deposition at pp. 246–248 are incomplete, presenting only up to page 246 of said deposition, which fails to support plaintiff's contention. (Docket No. 68–1). Furthermore, the Court may not avail itself of defendant's translation as to these deposition pages as being part of the record and for the benefit of opposing party since said attachment in Docket No. 61 was stricken as a non-authorized reply to response. (Docket No. 74).

**15.** Plaintiffs submission based on Ms. Collazo's statement is not considered on grounds unrelated to defendant's motion raising an opposition since same was stricken. (Docket Nos. 66, 77). This Magistrate Judge finds that indeed Ms. Collazo's hearsay statement

Plaintiff denies having an exit interview since he never came back to Universal after May 27, 2009 and such event is not relevant to age discrimination or the retaliation claims. (*Plaintiff's ¶¶ 105–107* ).

Plaintiff has submitted as retaliatory actions the filing of a counterclaim after he filed the instant Complaint for alleged breach of the no-competition Agreement, although plaintiff had previously worked for Integrand and defendant was well aware of the fact. (*Plaintiff's ¶ 108* ).

Plaintiff Méndez–Martínez denies he did not complain of age discrimination. He complained to Mr. Miranda in 2006 when a young employee was then hired and to Ms. Miranda in 2009 before plaintiffs employment termination, and when Ms. Vale was employed. They did not take corrective measures. (*Plaintiff's ¶ 113; Exhibit 2, pp. 177–180* ).

On several instances, plaintiff Méndez–Martínez emphasized Mr. Miranda's comments, which plaintiff attributed to age discrimination, that he wanted to gather a group of young people, with the youth to lift this business, so that his daughter—*i.e.* Ms. Miranda—will be surrounded by young people after he (Mr. Miranda) was gone, and she ends-up running the business. As to this comment, plaintiff directly asked Mr. Miranda if he was implying that "he (plaintiff Méndez–Martínez) was no longer useful because of his age", to which Mr. Miranda categorically responded: "no". (*Exhibit II, Méndez–Martínez' depo., p. 95.*). Such comments were made early in 2006, when a younger employee who was friend of Mr. Miranda's son in law (Mr. Schiavo) was named President of a sister company: Universal Life. (*Exhibit II, pp. 250, 251; 72–73, 98–99* ). In that first event plaintiff Méndez–Martínez asked Mr. Miranda to tell him if they had appointed that employee because of his

age, but Mr. Miranda did not respond. (*Exhibit II, pp. 250, 251* ). In that meeting, plaintiff told Mr. Miranda that he (plaintiff) was no "spring chicken" and that if Mr. Miranda wanted him to leave the Company he (Mr. Miranda) should tell him so. According to plaintiff, Mr. Miranda did not respond. (*Id.*). Although this event in 2006 would be considered time barred, for plaintiff did not submit an age discrimination claim until November of 2009, a second instance of alleged discriminatory remarks is claimed to have taken place in 2009. On the day after it was decided to consolidate the Company's outings in 2009, plaintiff met with Mr. Miranda and Ms. Miranda and inquired about their future plans for CAICO, as well as for him. In that meeting, Mr. Méndez–Martínez expressed some concern about his future, as well as CAICO's future, with the Company as he understood they had continued taking away functions, consolidated the "outing", and did not give him the purportedly new product. Plaintiff Méndez–Martínez added he did not know what it was they wanted but, if they were going to bring in young people, that they should tell him because he was no longer a "spring chicken". (*Exhibit II, p. 157* ). For those reasons, plaintiff specifically asked them if they wanted him to leave the Company or if they were going to terminate him. (*Exhibit II, pp. 157–158* ). The reply, as plaintiff Méndez–Martínez recognized, was: "[n]o you know that we are counting with you". (*Exhibit II, pp. 157–158, 159* ).

## LEGAL ANALYSIS

### I. AGE DISCRIMINATION CLAIMS.

An age discrimination claim under ADEA makes it unlawful for an employer to discharge any individual or otherwise discriminate against him on the basis of her/his age.[16] To establish such a claim in

does not comply with summary judgment legal considerations.

16. See 29 U.S.C. § 623(a)(1).

the absence of any direct evidence which demonstrates the defendant's alleged discriminatory animus against plaintiff, one must consider the multi-part test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Applying the *McDonnell Douglas* framework, plaintiff Méndez–Martínez must first "demonstrate that he: (1) was at least forty (40) years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action; and (4) was replaced by a person with roughly equivalent job qualifications." *See Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir.1993).

After a thorough review of the record in this case, considering relevant uncontested issues, this Magistrate Judge opines plaintiff Méndez–Martínez has failed to satisfy the *prima facie* case factors as to an age discrimination claim.

Plaintiff Méndez–Martínez meets the first two prongs of a *prima* facie case of age discrimination, to wit, that he was over forty (40) years age and he met the employer's legitimate expectation.[17] Still, to prevail on a claim under ADEA an employee must first establish *prima facie* that besides being at least forty (40) years of age and the job performance was met, he was subjected to an adverse employment action, e.g., actual or constructive discharge, and the employer continued to need for the services claimant rendered. *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111 (1st Cir.2004).

Insofar as the alleged adverse employment action in reference to plaintiff Méndez–Martínez being dismissed from his employment by defendant Universal, the evidence rather establishes as undisputed that plaintiff submitted on May 27, 2009 a written resignation letter from his employment which failed to present any claim of age discrimination. It is also undisputed that plaintiff complained of age discrimination around November 2009, when he submitted an administrative claim after having submitted his resignation and was no longer working for defendant.[18]

Plaintiff, however claims that thereafter, when he was not allowed by Mr. Miranda to withdraw his previous resignation, he was dismissed. Plaintiff considers having informed Ms. Miranda and Ms. Vega he was reconsidering his decision to resign and informing he had determined to remain at work. First and foremost, plaintiff has not argued that the resignation should be considered part of a constructive dismissal. After all, resignations are pre-

---

**17.** The protected age under ADEA is forty (40) years and plaintiff Méndez–Martínez at the time of employment with defendant was already forty-one (41) years of age, while Mr. Miranda, who employed plaintiff at the time, was over fifty-five (55) years old. Still more, Universal President, Mr. Berrios, who is alleged to have benefitted from the new product line plaintiff had initially requested, was sixty (60) years of age at the time. Furthermore, Mr. Perez, who is claimed to have taken over the duties of plaintiff as to administration of the CAICO's building, is also over sixty (60) years old.

**18.** Plaintiff Méndez–Martínez alleges to have previously complained to defendant of age discrimination upon conversations about recruitment of a younger individual in 2006, which was denied by Mr. Miranda and thereafter granted plaintiff salary increases, fringe benefits and promotions, as well as commendations for his work in 2008, and insofar as the Ms. Clairol and Botox reference conversation that plaintiff initiated and concluded, never acknowledged by defendant as to age discrimination, in 2009, in the presence of Mr. Miranda and Ms. Miranda. These events cannot be deemed a complaint and as such will bar those allegations of age discrimination that do not encompass his administrative filing in November of 2009.

sumed voluntary. *Christie v. United States*, 518 F.2d 584, 587, 207 Ct.Cl. 333 (1975).[19] The threshold to establish constructive discharge in violation of the ADEA is quite high and in evaluating same courts do not consider a plaintiffs subjective feelings, but employ an objective standard. For said reason, to succeed on a constructive discharge under the ADEA a plaintiff must demonstrate that working conditions were so intolerable that a person in his position would have been compelled to resign.[20]

Although plaintiff Méndez–Martínez has made claims of hostile work environment, there was no contradiction in light of defendant's uncontested facts that no adverse employment action ensued and no discriminatory animus because of age was established. Plaintiff was not able to rebut, as genuine issue of fact in controversy, that he resigned from his employment. There is no genuine controversy that Mr. Miranda did not grant plaintiff the opportunity to withdraw his resignation because of an age discriminatory animus. There was already a history between these two protagonists—Mr. Miranda and Mr. Méndez–Martínez—wherein plaintiff announced on two (2) prior occasions his intention to resign and was convinced to continue working with defendant, with subsequent increase of salary and fringe benefits. On those instances where defendant showed a genuine interest to retain plaintiff Méndez–Martínez in employment,

he was already under the protective age of the ADEA. The recruitment of plaintiff and other high managerial employees which were also above the protected age of over forty (40), were made by Mr. Miranda, who was also much older than these employees and which defeats an age discriminatory animus in employment.[21]

Even regarding other alleged instances as perceived discrimination, which are more a disagreement of plaintiff with business and management decisions and the consolidation of CAICO with other Universal subsidiaries, there is a subjective component. The outing event of CAICO being consolidated by all Universal companies and which plaintiff resented as a change in the previous policy, is uncontested that Mr. Miranda's reason for just one outing was unknown. Thus, a decision to consolidate outings of these companies cannot be attributed to an age bias decision. Other instances of plaintiff's perceived hostility by Mr. Miranda follow same footing for plaintiff Méndez–Martínez could not attest the reasons for Mr. Miranda's frequent visits to the CAICO Building or why he was accompanied inside his own building by what plaintiff subsequently determined to be a bodyguard, except for plaintiffs subjective feeling that these acts of Mr. Miranda were somehow discriminatory, as he also perceived from Mr. Miranda no longer shaking hands frequently.

**19.** *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167 (4th Cir.1988) (in public employees cases, however, a proper analysis is required to consider resignation as a waiver of due process). In federal administrative cases, resignation withdrawal may be allowed at the discretion of the agency before it becomes effective, in the absence of other legal provisions, regulation, or other reasons available to refuse.

**20.** We undertook to examine both possible contention of constructive discharge and hos-

tile work environment as reason for the resignation for we must apply the objective standard in determining whether an employer's action have forced an employee to resign. *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986).

**21.** The transfer of duties of managing CAICO's building in 2007 was placed upon Mr. Péréz, an employee who was sixty (60) years old.

Plaintiff bears the burden of presenting sufficient evidence to demonstrate that more probable than not, an employer took adverse employment actions based on a protected personal characteristic. Even an indirect comment regarding age as to the outing referred by plaintiff Méndez–Martínez in that Mr. Miranda did not want one Mr. Soto to attend, who was addressed as the "old fat guy", came together with not wanting either Mr. Forteza, "that kid" from attending, which seemly construed as some kind of dislike for these individuals participation in the company outing, cannot be assessed as stemming from age discrimination.[22]

However, plaintiff Méndez–Martínez also submits having presented his written resignation on account of indignation he suffered at the time because two (2) of his employees had just resigned (Mr. Forteza and Mr. Soto), which resignations, were not linked to age discrimination events attested to by Mr. Forteza or Mr. Soto.

Whether Mr. Miranda indeed made some remarks at some other time to plaintiff, as the one described in reference when his daughter Monique would be in charge of the Company when Mr. Miranda was no longer present, the undisputed evidence rather shows that age related comments were made by plaintiff Méndez–Martínez himself and as to which Mr. Miranda did not reply or answer, or even answering in the negative by attesting to counting with plaintiffs services.

The only comment directly attributed to Mr. Miranda in regards with age was that he wanted to have a team so that his daughter, Ms. Miranda, would be surrounded by young people after he (Mr. Miranda) was gone or was no longer present, and she ends-up running the business. (*Méndez–Martínez' depo., Exhibit II, pp. 93–96*). By itself, such a comment, presented by a company CEO at one time around 2006 as identified by plaintiff Méndez Martínez, from an individual who is much older than plaintiff, whom he recruited when plaintiff was already over the protected age of forty (40), who promoted plaintiff to position of President of CAICO at the age of fifty-five (55), and who retained employees in top managerial positions who were over sixty (60) years of age (Mr. Berrios and Mr. Perez), may have initial nuance of age reference, but not of the kind to constitute hostile work environment against older employees or even inherently discriminatory.[23]

Insofar as the changes of duties as claimed by plaintiff, which were given at some instances to even older employees, which as to plaintiff Méndez–Martínez still resulted in a promotion and not any demotion, are not an adverse employment action. An adverse employment action is one that affects employment or alters the conditions of the workplace, to wit; hiring, firing, failing to promote, reassignment of significantly different responsibilities or a decision causing significant change in benefits. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). An adverse change in the terms and conditions must be more disruptive than a mere inconvenience or an

---

**22.** Plaintiff Méndez–Martínez indicated Mr. Miranda did not want either Mr. Soto, being addressed as "old fat guy (*"elviejo gordo ese"*) on the Company outing. (*Exhibit II, Méndez–Martínez' depo., p. 174*)." Mr. Miranda also referred to Mr. Luis Forteza as a "kid" (*"el muchacito ese"*) and that he was not going on the outing either. (*Exhibit II, pp. 174, 176*).

**23.** Said comment did not result in plaintiff Méndez–Martínez filing any age discrimination claim and, besides being considered time-barred, was followed in the coming years with plaintiff receiving promotion and higher employment remunerations, thus not addressed to plaintiffs age status.

alteration of job responsibilities. *Marrero v. Goya P.R.*, 304 F.3d 7, 23 (1st Cir.2002).

These changes as to some duties perceived by plaintiff at a time of consolidation and reorganization of the various insurance companies, are far less than those that may establish an adverse employment action from a reasonable employee's perspective. Moreover, the challenged actions are not enough to support a charge of discrimination. Neither are these actions, attributed to the employer, sufficiently pervasive to constitute work harassment as a result of age discrimination[24] for work places are rarely idyllic retreats and the fact that an employee is displeased by an employer's acts or omissions does not elevate same to a materially adverse employment action. *Morales–Vallellanes v. Potter*, 605 F.3d 27 (1st Cir. 2010) (analyzing adverse employment actions within the context of Title VII violations).

Even to establish a constructive discharge so as to explain plaintiffs resignation letter as involuntary, had plaintiff Méndez–Martínez attempted to establish one, must be as result of work conditions which are so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign. *Lee–Crespo v. Schering–Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir.2003).[25] Besides plaintiff Méndez–Martínez' indication he submitted his resignation because of indignation when Mr. Forteza and Mr. Soto informed him on May 27, 2009 they were resigning, the acts by Mr. Miranda which plaintiff described are not of the kind from which work conditions and difficulties were so intolerable to be construed as a constructive discharge. *Meuser v. Federal Express Corp.*, 564 F.3d 507 (1st Cir. 2009). Plaintiff has not narrated events to support the harassment he perceived was so severe and oppressive that staying on the job while seeking redress would be intolerable. *See Reed v. MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 33 (1st Cir.2003). To the contrary, it is uncontested that plaintiff Méndez–Martínez did not endure any disciplinary action and his compensation and fringe benefits were substantially increased through out the years of employment.

Succinctly, it is undisputed that Mr. Méndez–Martínez by August 1, 2005, had been promoted to Executive Vice–President of Underwriting for CAICO. His annual base salary was increased to $191,700.00, plus $70,000.00 in expenses and other incentives and benefits. By the end of 2006, after plaintiff Méndez–Martínez informed Mr. Miranda he wanted to leave the Company, plaintiff was convinced otherwise and Mr. Miranda promoted him to President of CAICO. By April 2008, Mr. Méndez–Martínez' annual base salary, as CAICO's President, at age fifty-five (55), was increased to $227,739.62, receiving in addition other benefits such as car allowance, corporate expense account, and bonuses and by September 16, 2008, a 100% coverage of the payment for his health insurance plan. Within such a scenery, salary considerations are impor-

---

**24.** Besides change of some duties, plaintiff has complained of the creation of a call center for both CAICO and Universal, consolidation of the employees' outing activities, removal of building administration of CAICO— which was granted to another employee older than plaintiff, to wit, Mr. Perez.

**25.** The same applies to cases of constructive discharge in Title VII gender discrimination

claims and disability discrimination under ADA. Deborah F. Harris, J.D., *Circumstances in Title VII employment discrimination cases which warrant finding of "constructive discharge" of discriminatee who resigns employment*, 55 A.L.R. Fed. 418; Kurtis A. Kemper, J.D., *What Constitutes "Constructive Discharge" under Americans with Disabilities Act of 1990*, 182 A.L.R. Fed. 609.

tant in determining whether a job decision can support a claim of constructive dismissal or even discrimination in employment. *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23 (1st Cir.1997) (loss of prestige, standing alone, cannot support a finding of constructive discharge).

Additionally, plaintiff Méndez–Martínez further indicated he was expecting to receive in the event of voluntary or involuntary separation—provided he fulfilled with the no-competition Agreement—a one million dollar fee, which presents a significant incentive he may have perceived at the time of submitting his written resignation, but not so much so except to determine withdrawal of his resignation when Mr. Miranda indicated when presented with the letter that he would enforce the Agreement.[26]

Likewise, it defeats plaintiff's averments of enduring intolerable work conditions and hostile work environment his prompt attempt to withdraw his resignation and continue working for Universal, which he submits Mr. Miranda did not allow.

Not every discrepancy in proof is enough to forestall properly supported motion for summary judgment. Neither are courts in ADEA claims, to sit as super personnel departments, assessing merits or even rationality to employer's non-discriminatory business decisions. Under the *McDonnell Douglas* framework, plaintiff

has not established a *prima facie* case of age discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[27]

In light of the above uncontested issues of facts and the lack of an age discrimination or hostile work environment claim, the burden would not have shifted to the defendant Universal for once a *prima facie* case has perished, inference of discrimination never arises and employer's summary judgment should be granted; *Mesnick v. General Elec. Co.*, 950 F.2d 816; *see Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328 (1st Cir.1997). Thus, defendant Universal had no reason to present any evidence as to the reason for not accepting withdrawal of plaintiff's written resignation from employment, which on two (2) prior occasions had resulted in convincing plaintiff to keep working with significant promotional increases.[28]

The ADEA "does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1341 (1st Cir.1988). Plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment ac-

---

**26.** The one million dollars agreed upon was contingent on plaintiff's no-competition upon voluntary or involuntary separation of his employment with defendant Universal, that is, that he would not provide services for a competing business, engage in solicitation, or disclose confidential information of the defendant.

**27.** When the employee proved a *prima facie* case of employment discrimination, the employer bore only the burden of explaining clearly the non-discriminatory reasons for its actions and bore no burden of persuading the court by a preponderance of the evidence that

legitimate, nondiscriminatory reasons for the challenged employment action existed.

**28.** In the final stage of the analysis after plaintiff establishes a *prima facie* case, and defendant then submits reason for the action undertaken, the burden would have shifted back to plaintiffs to show that the employer's alleged justification was not its true reason for the adverse employment action, but was a mere pretext for age discrimination. *Id.; Mesnick v. Gen. Elec. Co.*, 950 F.2d at 823. Thus, the burden of proof remains with plaintiffs at all times.

tion. *See Mesnick v. General Elec. Co.,* 950 F.2d at 825.

As indicated by the Court of Appeals for the First Circuit in *Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d 40, 47–48 (1st Cir.2002) (citing *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 138, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)), the question on summary judgment is whether the slight suggestion of pretext present, absent other evidence from which discrimination can be inferred, meets plaintiff's ultimate burden. Furthermore, plaintiff always bears the ultimate burden of proving age was the determinative factor for the discharge and/or adverse employment action and/or retaliation. *Mesnick,* 950 F.2d at 823. When there is little overt evidence of age discrimination, the *prima facie* burden may be established through the *McDonnell Douglas* framework, slightly different in age discrimination cases, upon showing of certain standardized elements suggestive of possible discrimination. In a non-reduction of force scenario plaintiff could demonstrate some form of the need for the same services and skills and/or replacement, which in the present plaintiff Méndez–Martínez has not uncontested on the basis of evidence that would be admissible at trial in that Ms. Vale substituted him upon termination.

Considering all the above discussed, plaintiff has not established an age discrimination *prima facie* case, for which it is recommended that defendant Universal's request for summary judgment as to federal age discrimination claims of plaintiff Méndez–Martínez and, as further discussed below under similar criteria of state Law No. 100 antidiscrimination statute, be GRANTED.

## III. RETALIATION CLAIMS.

Plaintiff Méndez–Martínez also alleges to have suffered retaliation and/or harassment in employment based on the same

acts. In retaliation because of ADEA, a causal connection must be established between the protected conduct and the adverse action. The fact that a plaintiff* is unable to establish the employer violated the ADEA in first instance, is not necessarily fatal to a *prima facie* case of retaliation. Still, herein plaintiff has presented, as above discussed, no evidence the alleged adverse employment action resulted from any protected activity, such as complaints of age discrimination.

In order to establish *prima facie* case of retaliation in employment discrimination action, the employee must show he engaged in protected activity and that he suffered adverse employment action as a result of participation in said activity. *Bennett v. Saint–Gobain Corp.,* 507 F.3d 23, 32 (1st Cir.2007). As such, plaintiff needs to establish having engaged in protected conduct, suffering an adverse employment action and that said adverse action is one causally connected to the protected activity. *Hernandez–Torres v. Intercont'l, Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998).

Besides the same acts alleged as evidence of age discrimination and above discussed, plaintiff Méndez–Martínez submits retaliation and/or harassment as to an event subsequent to having no longer being employed by defendant Universal: he was subject to lawsuit due to the breach of the non-competition clause of the Agreement with defendant.

Plaintiff Méndez–Martínez has not contested defendant Universal's contention that there is an Agreement since 2004 upon which plaintiff was not to compete with defendant's line of business which offers incentives to both parties. Neither has plaintiff contested that he became employed in the same line of insurance business thereafter, except for a clarification that defendant well knew about the post-employment activities of plaintiff from the

beginning but thereafter filed a counter-claim once plaintiff submitted this action before this federal forum. Not only has plaintiff Méndez–Martínez not rebutted the employer's articulated legitimate non-retaliatory reasons for the filing of a counter-claim based on their Agreement, but events subsequent to his employment with defendant should not be the basis for a claim of retaliation. *Moron–Barradas v. Department of Educ. of Com. of Puerto Rico*, 488 F.3d 472, 481 (1st Cir.2007); (lack of *prima facie* case of retaliation upon absence of causal connection between the protected conduct and any adverse employment action); *Calero–Cerezo v. Dept. of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) (employee failed to meet burden of showing employer's legitimate non-retaliatory reason for action was pretext for retaliation).[29]

Thus, it is recommended that the claim of retaliation, related to acts subsequent to plaintiff no longer working for defendant, should also be entitled to summary disposition.

## IV. PENDENT STATE CLAIMS.

Plaintiff Méndez–Martínez also includes state pendent claims in this federal action. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See Martínez v. Colon*,

54 F.3d 980, 990 (1st Cir.1995). The exercise of pendent jurisdiction is discretionary. *See Cardona Jimenez v. Bancomercio de Puerto Rico*, 174 F.3d 36, 42 (1st Cir.1999).

For the most part, pendent claims, in the absence of federal claims having survived, are dismissed without prejudice, if at an early stage of the proceedings. Under Law No. 100, which under state law of the Commonwealth of Puerto Rico is equivalent to the federal ADEA,[30] providing civil liability in age discrimination action, there are similar requirements to establish a *prima facie* claim; mainly, demonstrating that the employee suffered an adverse employment action or constructive dismissal and the employment termination was indeed discriminatory. Considering the same factual contentions above under the ADEA, defendant Universal would also be entitled to summary disposition of said state claim under Law No. 100 for plaintiff Méndez–Martínez being unable to establish he was constructively discharged or even a *prima facie* case of age discrimination. As such, pendent state claims under Law No. 100, should be summarily dismissed.

Insofar as other supplemental claims, to wit, Law No. 115 (Complaint, Second Cause of Action), Article 1802 of the Puerto Rico Civil Code (Complaint, Fourth Cause of Action), Law No. 80 of May 30, 1976 (Fifth Cause of Action), these should be dismissed, without prejudice, upon absence of a surviving federal cause of action.[31]

---

**29.** As to any other unspecified remaining acts of defendant Universal that plaintiff Méndez–Martínez may consider retaliation, these are comprised and fall under the same criteria as his age discrimination claim, these were not established as entailing *prima facie* case because of an age discriminatory animus.

**30.** *Baralt v. Nationwide Mut. Ins. Co.*, 251 F.3d 10, 16 (1st Cir.2001); *Cardona Jimenez*

*v. Bancomercio de P.R.*, 174 F.3d 36, 42 (1st Cir.1999).

**31.** *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42 (1st Cir.2011) (a court must exercise informed discretion when deciding to assert supplemental jurisdiction over state claims, weighing comity, judicial economy, convenience and fairness).

## CONCLUSION

In view of the foregoing, it is recommended that defendant Universal's request for summary judgment (Docket No. 40) be GRANTED as follows:

— Claims for age discrimination under the ADEA, for retaliation and under state Law No. 100 be GRANTED, and said claims be DISMISSED WITH PREJUDICE; and

— Other supplemental claims under Law No. 115 (Complaint, Second Cause of Action), Article 1802 of the Puerto Rico Civil Code (Complaint, Fourth Cause of Action), Law No. 80 of May 30, 1976 (Fifth Cause of Action) be GRANTED, and said claims be DISMISSED WITHOUT PREJUDICE.

IT IS SO RECOMMENDED.

The Court has already provided specific instructions as to the time to object to this report and recommendation. (See Order of Referral at Docket No. 72). The Court stated: "The parties are reminded that any objections to the Magistrate's Report and Recommendation must be filed with the Clerk of Court 'within fourteen (14) days after being served with a copy thereof.'" Local Rule 72(d); *see also* 28 U.S.C. § 636(b)(1). **The parties are forewarned that no extensions of time shall be authorized to the parties to file objections to the R & R and that failure to submit the objections within the deadline provided shall be deemed by the Court as objection being waived. Furthermore, the Court hereby set aside the three (3) days term provided by Local Rule 5.1.** [emphasis in the original] (See *U.S. v. Diaz–Villafañe*, 874 F.2d 43, 46 (1st Cir. 1989) (*quoting Braxton v. Bi–State Dev. Agency*, 728 F.2d 1105, 1107 (8th Cir.1984) "[i]t is for the district court to determine what departures from it rules may be overlooked")).